# Brenzer *against* Wightman.

It is a rule of commercial law, that when the facts are ascertained and undisputed, what shall constitute due diligence in communicating notice of the dishonour of a bill or note, is matter of law to be decided by the court.

Although a note may not be in form negotiable, yet the payee may make it so by endorsing it payable to order, after which it becomes, as between the endorser and the holder, an inland bill of exchange, in which the endorser stands in the light of a new drawer of a bill payable to the order of the endorsee; and the holder, by taking it in this character, took it subject to all the rules that regulate the relations between endorser and endorsee in negotiable instruments.

If there be no time of payment mentioned in a bill, like a note payable at sight, a reasonable time is allowed to make the demand on the promiser; and if he refuse to pay, immediate notice must be given by the holder to the endorser.

ERROR to the Common Pleas of *Dauphin* county.

James Wightman against Mathias Brenzer. This action was founded upon the following due-bill:—

[Brenzer v. Wightman.]

" Due Mathias Brenzer $204.91 for value received, May 28th, 1837.

HUGH CURRAN."

Endorsed, " Pay James Wightman or order.

MATHIAS BRENZER.'

Wightman obtained this due-bill from Brenzer in October 1837, and wanting to raise money, he obtained it from Christian Caslow, and gave him the due-bill, as collateral security for it. A month or two after Caslow got it, he demanded payment from Curran; but he was unable to pay, and in a month or two after that, Caslow gave notice to Brenzer that the due-bill was not paid; subsequently he returned it to Wightman, who brought this suit to recover the same from Brenzer.

The court below referred the subject to the jury as a matter of fact whether there was due diligence used in giving notice to Brenzer of the non-payment of the due-bill by the drawer, and the jury found a verdict for the plaintiff.

*Herman Alricks,* for plaintiff in error. The endorsement of this due-bill was the making of a bill of exchange as between the endorser and endorsee, although the original instrument was not negotiable. 3 *Whart.* 120; 9 *Watts* 356; 8 *Serg. & Rawle* 356. This being so, then the reasonableness or unreasonableness of notice was a question of law to be determined by the court; and they should have instructed the jury that the delay to give notice was unreasonable. 8 *Serg. & Rawle* 354; 9 *Johns.* 121; 1 *Yeates* 145; 1 *Peters* 578; 7 *Cow.* 705; *Chit. Bills* 291; 10 *Mass.* 84; 3 *Rawle* 359; 1 *Dall.* 255; 3 *Wash. C. C. Rep.* 396.

*Cake* and *Ott,* contra, argued that the original note not being negotiable, the transaction would not be governed by those strict rules of commercial law which regulate the rights and liabilities of parties to such instruments. 8 *Serg. & Rawle* 135. And in this case the court were right in submitting the question as to whether the notice was reasonable or otherwise to the jury. 8 *Serg. & Rawle* 355; *Chit. Bills* 377; 1 *Dall.* 255; 2 *Dall.* 192. 233; 1 *Serg. & Rawle* 531; 4 *Dall.* 165; 1 *Saund. Pl. & Ev.* 258; 2 *Watts & Serg.* 401; 1 *Yeates* 360. Besides, if a note be received in payment of a precedent debt, the same diligence is not necessary. 2 *Wash. C. C. Rep.* 191; 3 *Whart.* 116; 7 *Serg. & Rawle* 321.

The opinion of the Court was delivered by

SERGEANT, J.—There is certainly a discrepancy to be found in the reported cases in this State on the question whether the reasonableness of notice to an endorser of the non-payment of a promissory note or bill of exchange is a question for the court or for

the jury; and the same remark may be made on the older cases on this subject in many of the other States of the Union and in England. But the doctrine seems now to be settled as a rule of commercial law, that where the facts are ascertained or undisputed, what shall constitute due diligence in communicating notice of the dishonour of a bill or note is matter of law. *Bank of Columbia* v. *Lawrence*, (1 *Pet. S. C.* 578); *Aymer* v. *Beers*, (7 *Cow.* 105; 8 *Johns.* 173; 11 *Johns.* 231; 10 *Mass.* 84; 3 *Marsh.* 264; *Chitty on Bills* 366. And of late this court has adopted the same principle, considering it of the first importance that the commercial law should be everywhere the same. This due-bill, as originally drawn, was not a negotiable instrument. But the payee, by endorsing it payable to order, made it negotiable; after that it became, as between the endorser and the holder, an inland bill of exchange, in which the endorser stood in the light of a new drawer of a bill payable to the order of the endorsee; and the holder, by taking it in this character, took it subject to all the rules that regulate the relation between endorser and endorsee in negotiable instruments. *Leidy* v. *Tammany*, (9 *Watts* 353). No time of payment being mentioned, it resembled a note payable at sight or on demand. There was no necessity for a demand at any particular time, as there is where a note is made payable at an appointed day; but like such a note endorsed after it becomes due, a reasonable time is allowed to make the demand on the promiser. *M'Kenney* v. *Crawford*, (8 *Serg. & Rawle* 354). Whether the demand in the case before us was made in a reasonable time, it is unnecessary now to inquire; because, supposing it to have been so, yet when a demand is actually made by the holder, and there is a refusal by the maker to pay, there is no reason why the rule requiring immediate notice of the non-payment to be sent to the endorser, should not apply in the same manner as it does in the case of the demand and refusal of payment of a note or bill originally made payable at a particular day. In becomes *equally* important *to the* endorser *to receive immediate notice of the non-*payment, that he may take measures to collect the money from the maker, which he might lose by delay of notice; and the plaintiff, by omitting to give due notice, ought equally to be considered as discharging the endorser, and agreeing to look to the maker. The endorser's engagement is in both cases conditional, not absolute. According to the settled principles of commercial law, the holder is bound, in case of an inland bill, to forward immediate notice, on the day following the refusal, where there exists no reason to account for the omission to do so. *Chitt. Bills* 367. It seems Caslow, the holder of this paper after the endorsement, demanded payment from Curran, the maker, in November or December 1837, which was refused. A month or two afterwards he saw Brenzer, and told him the note was unpaid. No circumstance appears at the time of the endorsement or since that dispenses

[Brenzer v. Wightman.]

with the necessity which the law imposes of giving due notice to the endorser.  Supposing, then, that the notice actually given by Caslow was sufficiently precise to constitute legal notice, yet in point of time we are of opinion it was too late, and that the court ought to have instructed the jury, as requested by the defendant, that the defendant did not receive due notice of the non-payment of the note, and was not therefore liable upon it as endorser.

Judgment reversed, and *venire de novo* awarded.