ERIE GENERAL TERM, March, 1849.   *Hoyt, Mullett, and Marvin*, Justices.

### DOLE *vs.* GOLD.

The sufficiency of a notice to an endorser of a note, when there is no dispute about the facts, is a question of law, to be determined by the court.

A notice to an endorser must, in express terms, or by necessary implication, convey to him information of the fact that the note has been dishonored by the maker; or such notice will be insufficient to charge him.

A maker of a negotiable promissory note, payable at large, does not, in this sense, dishonor his note until, upon due presentment for that purpose, he refuses or neglects to pay it.

ERROR to the recorder's court of the city of Buffalo, to review a judgment of that court affirming a judgment of a justice's court. The action before the justice was for the recovery of the money due on a promissory note made by Andrew Cole, payable to the order of Benjamin Dole, and endorsed by him. Dole being served with process, appeared before the justice and pleaded the general issue. On the trial before the justice the plaintiff produced the note, proved the making and endorsing thereof, a demand of payment of the maker in due time, his refusal to pay, and that on the same day of the demand he caused a written notice to be served on Dole, the endorser, in the words following:

"BUFFALO, Sept. 8th, 1847.

Dear Sir—A note of $22,50, made by Andrew Cole and payable to your order, and endorsed by you, is due this day, and has not been paid. You will therefore take notice that I am the owner and holder of said note, and look to you for the payment of the same.      Yours, &c,      C. R. GOLD."

And thereupon the plaintiff rested his case. The defendant, Dole, moved for a nonsuit, on the ground that the notice was not sufficient to charge him as endorser ; that it was defective in not stating that payment of the note had been demanded of the maker.

Dole v. Gold.

The justice refused the nonsuit, and gave judgment for the plaintiff, against Dole, for the amount of the note, interest and costs. The judgment was taken to the recorder's court, by certiorari, and there affirmed. The judgment of the recorder's court was brought here by writ of error. The only question made on the argument in this court, or presented by the case, related to the sufficiency of the notice to the plaintiff in error, to charge him as endorser of the note made by Cole.

*W. H. Greene*, for the plaintiff in error.

*C. H. S. Williams*, for the defendant in error.

*By the Court*, MULLETT, J. The conditional nature of the endorser's contract is not denied in this case, nor is it denied that to make the endorser liable, the holder of the note must prove on the trial, that the payment of the note was properly demanded of the maker, and refused or neglected by him; or, in other words, that the note was dishonored by the maker, and that the requisite notice was given to the endorser. The demand and non-payment were sufficiently proved before the justice, and the only question for our consideration relates to the sufficiency of the notice to the endorser. The notice was a written notice subscribed by Gold, the holder of the note, addressed to the endorser, dated and served the day the note became due, and stated that the note, describing it, was *due that day and had not been paid*, and that the subscriber was the owner and holder of the note, and looked to the endorser for the payment of the same. This presents the question whether it was necessary that the notice should inform the endorser that payment of the note had been demanded of the maker. In this state, the sufficiency of the notice, when there is no dispute about the facts, is a question of law, to be determined by the court. (*Vanhoesen* v. *Alstyne*, 3 *Wend.* 75. *The Bank of Utica* v. *Bender*, 21 *Id.* 643. *Remer* v. *Downer*, 23 *Id.* 620. *Ransom* v. *Mack*, 2 *Hill*, 587. *Spencer* v. *Bank of Salina*, 3 *Id.* 520.)

Dole v. Gold.

These decisions are in accordance with the English doctrine on the subject, as it was asserted by Buller, Justice, in the case of *Tindal* v. *Brown*, decided in 1786, (1 *T. R.* 169,) and generally maintained by the king's bench ever since. For the more recent English decisions on this subject, see the chancellor's references in the case of *Remer* v. *Downer*, above cited. The same principle is adopted in several of the states. In Massachusetts, in the cases of *Gilbert* v. *Dennis*, (3 *Met.* 495,) *Pinkham* v. *Macy*, (9 *Id.* 374.) In Pennsylvania, in the case of *Brenzer* v. *Wightman*, (7 *Watts & Serg.* 264.) In Michigan, in the case of *Platt* v. *Drake*, (1 *Doug. Mich. Rep.* 296,) and by the supreme court of the United States, in the cases of *The Bank of Columbia* v. *Lawrence*, (1 *Peters' Rep.* 578, *Thompson, J.* 582;) *Rhet* v. *Poe*, (2 *Howard's U. S. Rep.* 457, *Daniel, J.* 480, 481;) *Harris* v. *Robinson*, (4 *Id.* 336, *Woodbury, J.* 344, 345.)

This being the settled law, the question of the sufficiency of the notice cannot be avoided by the court, under any pretence of submitting it to a jury, to say whether the party could understand what was meant, or whether he was misled by it or not. It is true, there may be many facts connected with the question of proper diligence in giving notice—such as the residence of the parties, the course of communication between them, &c.—which must be submitted to a jury; but the notice, however and whenever sent, must speak for itself. In a case like the one under consideration, there are no extrinsic facts for the jury to find. The notice was properly sent, and shows upon its face what information it gave the endorser, and the court must decide whether it is sufficient or not. The necessity of giving notice to the endorser, grows out of the legal construction of the obligation which he assumes by endorsing the note. Mr. Justice Story, in his Treatise on Promissory Notes, section 135, says: " The endorsement of a note, in contemplation of law, amounts to a contract on the part of the endorser, with and in favor of the endorsee, and every subsequent holder to whom the note is transferred, *first*, that the instrument itself and the antecedent signatures thereon are genuine; *second*,

that he, the endorser, has a good title to the instrument; *third*, that he is competent to bind himself by the endorsement, as endorser; *fourth*, that the maker is competent to bind himself to the payment, and will, upon due presentment of the note, pay it at maturity; *fifth*, that if, when duly presented, it is not paid by the maker, he, the endorser, will, *upon due and reasonable notice given to him of the dishonor*, pay the same to the endorsee or holder. The terms of this contract impose upon the endorsee or holder an obligation to make an attempt to obtain payment from the maker, and to give notice of such attempt, and its failure, to the endorser; and the performance of this obligation is a condition precedent to the right of the holder to resort to the endorser for the payment of the note. Until the performance of this obligation on the part of the holder, the endorser's liability is *contingent*—upon the performance, it becomes *absolute*. One part of this condition precedent, to be performed by the holder, is the giving of the notice to the endorser. What must this notice contain? The requisites of the notice, that is, what information it must give to the endorser, must be prescribed by law, though the law requires no particular form of words in which that information must be conveyed." (*Story on Bills of Exchange*, § 390. *Story on Promissory Notes*, § 348.)

In his Commentaries on the Law of Promissory Notes, section 348, Mr. Justice Story says: "It is indispensable that the notice should either expressly or by just and natural implication, contain in substance the following requisites: 1st. A true description of the note, so as to ascertain its identity. 2d. *An assertion that it has been duly presented to the maker at its maturity, and dishonored.* 3d. That the holder or other person giving the notice, looks to the person to whom the notice is given, for payment and indemnity."

The second requisite is the only one in question in this case. The counsel for the defendant in error insists, that it is not necessary in the notice to the endorser, to inform him that payment of the note had been demanded of the maker, and he relies principally upon the case of *Mills* v. *The Bank of the United*

*States*, (11 *Wheat. Rep.* 431,) to sustain that proposition. It is true, that some of the language of the learned judge, who delivered the opinion of the court in the case of *Mills* v. *The Bank of the United States*, disconnected from the subject matter of the case, would seem to favor the assumption of the defendant in error; but applied to the case then under consideration, the opinion merely decides that a notice to an endorser of a note, describing it as payable at a particular bank, on a certain day, and endorsed by him, had been *protested for non-payment*, was not fatally defective by reason of its not stating that payment was demanded at the bank when the note became due. (*See Ch. J. Shaw's review of the opinion in the case of Mills v. The Bank of the United States*, 3 *Met. Rep.* 495.)

But whatever may be considered as decided in the case of *Mills* v. *The Bank of the United States*, the opinion of the court was delivered by Mr. Justice Story, in February, 1826, and before the particular requisites of a notice to an endorser had been a subject of much judicial discussion. About this time the particular point now under consideration became a subject of extensive litigation in the English courts, which occupied their attention for several years. In 1825, it was decided by the king's bench, in *Hartly* v. *Case*, Abbott, Ch. J. delivering the opinion, that a notice from the holder of a bill of exchange to the endorser, in the following form: "I am desired to apply to you for the payment of the sum of £150, due to myself on a draft drawn by Mr. S. on Mr. Case, which I hope you will, on receipt, discharge, to prevent the necessity of law proceedings, which otherwise will immediately take place," was insufficient to charge the endorser, because it did not apprize the party of the fact of dishonor. The Ch. J. says that no particular form of words is necessary in such a notice, but the *language used* must be such as to convey notice to the party what the bill is, and that payment of it has been refused by the acceptor. (4 *Barn. & Cress.* 339; *S. C. Dowl. & Ryl.* 505. 10 *Eng. Com. Law Rep.* 350.) About the same time the great case of *Solarte* v. *Palmer*, originated in the common pleas. Lord Tenterden, at nisi prius, had instructed the jury that a letter

from the attorney of the holders, addressed to the endorsers of a bill of exchange, in the following words: "Gentlemen—A bill for £683, drawn by Mr. Joseph Keats upon Messrs. Daniel, Jones & Co., and bearing your endorsement, has been put into our hands by the holders, (naming them,) with directions to take legal measures for the recovery thereof, unless immediately paid to yours, &c." was insufficient to charge the endorser, to which direction the plaintiff excepted. The bill of exceptions stated that the chief justice did then and there declare and deliver his opinion to the jury, that the letter was not a sufficient notice of the dishonor and non-payment of the bill of exchange to entitle the plaintiffs to maintain their action against the defendants, and that the jury thereupon gave a verdict for the defendants. The court, upon the bill of exceptions, having overruled the decision of the chief justice, and given judgment for the plaintiff, this judgment was taken into the court of exchequer chamber by writ of error; and in A. D. 1831, was reversed by the unanimous concurrence of all the members of the court. The leading opinion on the reversal was delivered by Tindal, Ch. J. who sustained the nisi prius decision of Lord Tenterden, and, in his opinion, says: "The notice should at least inform the party to whom it is addressed, either in express terms or by necessary implication, that the bill has been dishonored. In this notice we think no such information is conveyed in terms, or is to be necessarily implied from its *contents.* It is perfectly consistent with this notice, that the bill has never been presented at all." (7 *Bing.* 350. 20 *Eng. Com. Law Rep.* 226.) This case was appealed to the house of lords, and decided there in 1834, upon which the judgment of the court of exchequer chamber was affirmed. Park, J. delivering the leading opinion, says: "The letter of the plaintiff's attorneys did not amount to a notice of the dishonor of the bill; as such notice ought in express terms, or by necessary implication, to convey full information that the bill had been dishonored." Lord Brougham, C. concurred in the opinion, on the authority of *Hartly* v. *Case,* the unanimous decision of the exchequer chamber, and the 5th edition of Bayley on Bills, and

Dole *v.* Gold.

remarked, "that the case was too clear for an appeal." The decision of the house of lords was concurred in by all the judges present, who had been summoned to hear the argument, to wit: Williams, J., Bolland, B., Alderson, B., Patteson, J., Taunton, J., Littledale, J., Vaughn, J., and Gaselee, J. (1 *Bing*. *N. C.* 194. 27 *Eng. Com. Law Rep.* 351.)

The next case in point of time is that of *Boulton* v. *Welch*, decided in the common pleas, in 1837. Park, J. at nisi prius, had decided that a notice from the holder to the endorser of a promissory note, describing the note by its amount, the maker's name, its date and the time of its payment, and stating that it was endorsed by him, and that "it became due yesterday, and was returned to him (the holder) unpaid," and requesting payment forthwith, was not sufficient. A verdict, however, was taken for the plaintiff, with leave to the defendant to move for a nonsuit. On the hearing of the rule nisi for a nonsuit, Tindal, Ch. J. said: "It did not appear from the letter, (notice,) by necessary inference, that the note had been dishonored. The rule requires that either expressly or by necessary inference, the notice should disclose that the bill or note had been dishonored ; here the notice only states that the note had become due and had been returned unpaid. I think, therefore, that the notice is insufficient, and that this rule must be made absolute." Park, Bosanquet, and Coltman, justices, expressly concurred, on the authority of *Hartly* v. *Case*, and *Solarte* v. *Palmer*, (3 *Bing*. *N. C.* 683 ; 32 *Eng. Com. Law Rep.* 283.) In the case of *Phillips* v. *Gould*, Patteson, J. at the sittings in London, in 1838, ruled that notice from the holder to the endorser of a bill of exchange, stating that a bill of exchange (describing it) "lies at my office due and unpaid," was not a good notice of the dishonor of the bill, and referred to the case of *Solarte* v. *Palmer*, as decided by the house of lords, (8 *Car. & Payne*, 335. 34 *Eng. Com. Law Rep.* 425.)

In the case of *Strange* v. *Price*, decided in the common pleas, in 1839, that court, on the authority of *Hartly* v. *Case* and *Solarte* v. *Palmer*, decided that a notice in substance as follows : "Messrs. S. & Co. inform Mr. P. that Mr. B.'s acceptance,

Dole *v.* Gold.

£57 5s. 5d., is not paid. As endorser Mr. P. is called upon to pay the money, which will be expected immediately," was insufficient. Denman, C. J., Littledale, Patteson, and Coleridge, Justices, concurring. (10 *Ad. & Ellis,* 125 ; 37 *Eng. Com. Law Rep.* 71.)

In the case of *Messenger* v. *Southey,* decided in the common pleas, in 1840, the question of the requisites of a notice to an endorser of a bill of exchange again came before the court for consideration. The notice was in this form : " Sir ; This is to inform you that the bill I took of you, £15 2s. 6d., is not took up, and 4s. 6d. expenses, and the money I must have immediately. My son will be in London on Friday morning"—was, within the previous decisions, insufficient. Tindale, J. delivering the opinion of the court. (1 *Man. & Gran. Rep.* 76 ; 39 *Eng. Com. Law Rep.* 360.)

The last English case to which I am able to refer, is that of *Furze* v. *Sharwood,* decided in the king's bench, in 1841, in which, after a review of all the previous cases, it was determined in substance that a notice of the dishonor of a bill, by whatever party given, is insufficient if it merely state that the bill has not been paid when due. (2 *Ad. & Ellis Rep. N. S.* 338 ; 42 *Eng. Com. Law Rep.* 726.) Thus, after a kind of judicial obstinacy on the part of some of the judges of the common pleas, for about sixteen years, it is finally settled by all the courts, with the express concurrence of the ablest judges of one of the most commercial nations on earth, that when there is no dispute about the facts, the sufficiency of notice to an endorser of a bill or note is a question of law, and that the notice must, by its language, directly or by reasonable implication, inform the endorser that the paper has been dishonored, or the court will declare it insufficient. The same principle was adopted by the supreme judicial court of Massachusetts, in 1842, in the case of *Gilbert* v. *Dennis,* (3 *Met. Rep.* 495,) and adhered to by the same court in 1845, in the case of *Pinkhum* v. *Macy,* (9 *Id.* 174.) In this last case, Shaw, C. J. reasserts the rule that the " notice must be such as to inform the endorser, either in terms or by reasonable implication, that the note is dishonored, that

is, that it has been presented for payment and payment refused, or other acts done which are deemed equivalent."

It appears by the digests that the same rule is adopted in several of the other states, but I have not time to refer to the decisions.

In 1845, after these repeated and almost annual adjudications of the English, and some of the highest American courts, for twenty years, the same learned jurist, who delivered the opinion in the case of *Mills* v. *The Bank of the United States,* in his Commentaries on Promissory Notes, not only states the "indispensable requisites" of the notice to an endorser, as above quoted from § 348, but in § 350, as to the statement in the notice, that the note has been duly presented and dishonored, says—"This statement is essential to establish the claim or right of the holder, or other party giving notice, for otherwise he will not be entitled to any payment from the endorser. It will be sufficient, indeed, if the notice sent, necessarily, or even fairly, implies by its *terms* that there has been a due presentment and dishonor at the maturity of the note, but mere notice of the fact that the note has not been paid, affords no proof whatever that it has been presented in due season, or even that it has been presented at all." And in § 354, the same learned author, after remarking that the rule adopted in the American courts upon the subject, is far more liberal than that generally maintained in the English courts, says—"If, however, there be no statement of the dishonor of the note, nor any thing from which it can fairly be implied that due presentment has been made, the notice would seem to be fatally defective." This rule requires only that the endorser should have notice of the dishonor of the note. Whatever will show the dishonor, is sufficient. Where a note is made payable at a bank, or other particular place, it is the business of the maker to have funds there at the time to take it up, and if he neglect to do so, he dishonors his note, and it is sufficient to inform the endorser of that fact. No personal demand of the maker is necessary. But the maker of a negotiable promissory note, payable at large, which may be transferred *ad infinitum,* without his knowledge, does

not dishonor his note until upon due presentment and demand he refuses or neglects to pay it. In such case, the holder must make a personal demand, or what is equivalent to a personal demand, of the maker, before he can claim, as against the endorser, that the note is dishonored. (*Taylor* v. *Snyder*, 3 *Denio*, 145. *Gilmore* v. *Spies*, 1 *Barb. S. C. Rep.* 158.) I confess I am unable to perceive upon what ground this rule can be called illiberal. It prescribes no particular form of notice, which business men must go to a law book to learn, and which must be adhered to, even at the expense of substance. It simply requires the holder, in such language as he may choose to adopt, to inform the endorser of the fact that the maker, on being called upon, has neglected to pay the note. That the contingency upon which the endorser's promise to pay the note depended, has happened, and that his liability has become absolute, or in other words, to do what he agreed to do, as the condition of having the endorser's security. This is a condition of the contract important to the endorser, whose rights are as worthy of protection as those of the holder, and I do not see upon what principle the courts can deprive him of its benefits. It is no answer to say that the holder cannot recover in an action against the endorser, without proving the dishonor of the paper by the party primarily liable. The endorser is not bound by his contract to incur the trouble, expense and business discredit of a lawsuit, to find out his liability. He contracted for a cheaper, fairer and more business-like mode of information, and he has a right to it, and by the rules of fair dealing he has a right to rely on it. And I have no doubt that if an endorser has been induced to pay the paper endorsed by him, by a false notice of its dishonor, he may recover back the money from the party who has thus fraudulently obtained it.

It was suggested on the argument that the rule contended for is too inflexible and unvarying for practical business purposes; that the activity of commercial pursuits could not safely be cramped by fixed rules on this subject. If it is necessary that this subject should be regulated by law, it is highly proper that that law, however liberal and expanded it may be, should be

Dole v. Gold.

fixed and invariable.    That this subject should be governed by
law, is a conclusion not only of reason but of experience.   Com-
mercial business dreads nothing so much as uncertainty ; it
can adapt itself to almost any fixed system, but cannot endure
change and mutability in a system by which it is to be governed.
Uncertainty destroys business confidence, and discourages en-
terprise.   What man would deal in commercial paper, which
in some form or other must in all commercial countries be to a
great extent the medium of exchange and business, if the lia-
bility of the parties to it was from time to time, and again and
again, to be left to the verdict of a jury, who, with the purest
motives and highest intelligence, have, from their organization,
no power to produce uniformity of decision.   The necessity of
fixed rules on the subject of notice to endorsers was strongly
advocated by Lord Mansfield, and the evils of judicial hesitancy
to declare such questions to be questions of law and not of fact,
noticed by Buller, J. in the case of *Tindall* v. *Brown*, above
referred to.   In alluding to the course of English decisions on
this subject at that time, the last mentioned honest and learned
judge remarked that " The numerous cases on this subject re-
flect great discredit on the courts of Westminster.   They do
infinite mischief in the mercantile world, and this evil can only
be remedied by doing what the court wished to do in the case
of *Metcalf* v. *Hale*, by considering the reasonableness of time
a question of law and not of fact."   This evil, which would be
as great now as it was then, has been remedied by the adoption
of the rule proposed, and the measure has received the appro-
bation of the business experience and the judicial wisdom of
three generations, and I have no doubt that it ought to be sus-
tained, for its conformity to the contract between the parties,
for its own intrinsic reasonableness, and for its fitness to pro-
mote the safety and prosperity of commercial transactions.
After having examined this question more with reference to the
importance of the principle involved in it, than the amount in
controversy between the parties, I have come to the conclusion
that the sufficiency of the notice under consideration was a
question of law ; that the notice was clearly defective ; that the

justice and the recorder's court erred in sustaining it; and that for this reason the judgment of the recorder's court, and that of the justice, must be reversed.

                                        Judgment reversed.