ULYSSES B. BREWSTER, *Plaintiff in Error*,

*vs.*

JONATHAN E. ARNOLD, *Defendant in Error*.

ERROR TO THE CIRCUIT COURT OF MILWAUKEE COUNTY.

A promissory note was made in the city of New York by J. A. A., payable
to the order of J. E. A., at No. 44 Cedar Street, New York, and endorsed
by J. E. A. On the last day of grace, the note was presented by a notary
public at the place of payment, payment demanded and refused ; the note
was protested by the notary, and a notice of the protest, containing a de-
scription of the note, and a statement that the same had been protested for
non-payment, and that the holder looked to him for indemnity, was sent by
due course of mail to the endorser at Milwaukee : Held, that the notice of
the dishonor of the note was sufficient to charge the endorser.

The term "*protested*" has a fixed technical meaning, and when contained in
a notice, with the statement that the holder looks to the endorser for indem-
nity, fairly and necessarily implies that the note or bill has been dishonored.

No particular form of words is necessary in a notice ; all that is necessary is
to appraise the party of the dishonor of the bill or note.

The essential requisites of the notice are, a true description of the note ; an
assertion that it has been duly presented at maturity, and dishonored ; and
that the holder looks to the person to whom the notice is given for indem-
nity.

The term "*protest*" implies a demand and refusal, and implies that the note
has been dishonored. Though the term, in a strict technical sense, is not
applicable to promissory notes, yet the word, by general usage, has acquired
a more extensive signification, and may include all the acts which are ne-
cessary to charge an endorser.

The term "protested for non-payment," whether used in case of a foreign or
inland bill of exchange or promissory note, are equivalent to the statement
of presentment for payment and refusal, and are sufficient to charge the en-
dorser.

This was an action of assumpsit, brought by the
plaintiff in error, against the defendant in error, as en-
dorser of two promissory notes for $510.36 each, made
by Joseph A. Arnold ; one dated October 6th, the
other October 20th, 1845, payable each three months
after date to the order of Jonathan E. Arnold, at 44

Cedar street, New York, and by him endorsed to

plaintiff, by writing on the back of each, " J. E. Arnold, Milwaukee, W. T."

The defendant pleaded the general issue ; and at the trial, (May Term, 1852,) the plaintiff read the notes in evidence, together with the endorsements, and proved that the notes were made and endorsed in the city of New York, where they were payable ; that a notary public presented each of said notes on the last day of grace, after banking and during business hours, at the place where they were payable to a person in attendance there, and demanded payment, which was refused, and thereupon protested said notes for non-payment. That, on the 9th day of January, 1846, after presentment, demand and protest of the note due on that day, and before the next regular mail, the notary put into the post office, in the city of New York, a notice of protest of the note, directed to "J. E. Arnold, Milwaukee, Wisconsin," which notice contained a description of the note, and stated that it had been that day protested by him for non-payment, and that the holders looked to said J. E. Arnold for payment. Also, that a similar notice was given of the non-payment and protest of the other note on the same day it became due, deposited in the post office, and directed in the same manner. That said defendant resided, in 1846, in Milwaukee, Wis.

The plaintiff further proved that promissory notes by the statute laws of New York, were, in 1845 and in 1846, negotiable, like inland bills of exchange, and that notaries public, by the laws of New York, were then authorized to demand payment of promissory notes, and protest the same for non-payment, and give notice thereof, and their certificates, under their hands

and seals, of their doings, were, in certain cases, evidence thereof in the courts of the State; and that the Court of Appeals of the State of New York had decided that such a notice was sufficient.

The foregoing is all the material testimony. The plaintiff asked the court to instruct the jury, that if they believed the evidence in the cause, sufficient notice of dishonor of said notes was given to the defendant; which instruction was refused by the court, and the plaintiff excepted. And the court instructed the jury, that the notice of dishonor was insufficient, and, on account of the insufficiency of the notices to the said defendant of the dishonor of the said notes, the jury must find for the defendant; to which instruction the plaintiff excepted. And thereupon the jury found for the defendant, and judgment for costs was entered upon the verdict, against the plaintiff, to reverse which this writ of error is brought.

The following are the errors assigned:

1st. The court erred in refusing the instruction asked by the plaintiff.

2d. The court erred in instructing the jury, that on account of the insufficiency of the notices of dishonor of said notes, they must find for the defendant.

3d. The court below erred in giving judgment in favor of the defendant and against the plaintiff.

*Jason Downer*, for the plaintiff in error.

There is but one question presented in this cause, and that is, were the notices of the dishonor of the notes, so clearly insufficient in the law, as to warrant the *positive* instructions of the court to the jury to find for the defendant; an instruction in the nature of

a demurrer to evidence, and equivalent to saying, "admitting all the evidence to be true, and every presumption and inference that a jury might draw therefrom, still the plaintiff cannot recover." So far from this being true, the notices as proved, were sufficient.

1st. The notes being made, endorsed, and payable in New York, the notice and its sufficiency must be tested solely by the law of that State. Of the sufficiency of the notice, by the law of that State, there is no question. *Cayuga Co. Bk. vs. Warden*, 1 *Comst.* 419 ; *Bk. of Rochester vs. Gould*, 9 *Wend.* 280 ; 23 *Wend.* 620 ; *Story's Conflict of L*, § 360 ; *Rymar vs. Sheldon* 13 *Wend.* 438.

2*d*. But the notices were, in form and substance, sufficient, by the general law merchant, everywhere. *Mills vs. Bk. U. S.*, 11 *Wheat.* 374 ; *Crocker vs. Gitchell*, 23 *Maine* 392 ; *Smith vs. Little*, 10 *N. H.* 526–531 ; *Maine vs. Spurlack*, 9 *Robinson*, 161 ; 1 *Am. Lead. Cases*, 238 ; and cases there cited.

The case of *Platt vs. Drake*, 2 *Doug.* 300, was commented upon by the counsel, in his written brief, contending against the correctness of the decision in that case.

*C. A. Hamilton*, for the defendant in error.

There are two questions presented in this case ; were the notices of dishonor proved, sufficient ; and was there proof of due presentment.

1. The notices of dishonor were insufficient by the general law merchant.

A notice of dishonor of a promissory note must, by express terms, or by natural or necessary implica-

tion, from the language used, contain in substance, a true description of the note, *an assertion of due presentment and dishonor*, and that the holder looks to the party to whom the notice is sent, for indemnity. *Story on Bills*, § 390 ; *Story on Promissory Notes*, § 350 ; *Am. Lead. Cases*, 375–383.

The contract of an endorsee is conditional that the note shall be presented for payment, and if payment is refused, upon notice of such presentment, demand and refusal, he will be liable. The proof was, that the notary sent notices of protest to the endorser, which notices stated that the notes had that day been *protested for* non-payment, and the holder looked to him for payment. This notice may imply that the notes were unpaid ; but that is insufficient (*Story Pr. Notes*, § 350 ;) the notice must contain language which *naturally* or *necessarily* implies presentation and dishonor ;    *    *    *    The words " returned unpaid," " dishonored," import that the conditions precedent to the endorser's liability, have been performed, and the word " protested," in the case of a *foreign* bill, that the requirements of the law merchant have been fulfilled. *Solarte vs. Palmer*, 7 *Brig.* 530 ; *Houlditte vs. Canty*, 4 *Ad. N. C.* 411 ; *Phillips vs. Gould*, 86 *and p.* 355 ; *Strange vs. Price*, 10 *Ad. and El.* 625 ; 10 *id.* 75 ; 2 *id.* ; *N. S.* 429, *id.* 421 ; 1 *Car & Kirwan*, 41 ; 4 *Denio*, 163 ; 2 *Hill*, 579 ; 2 *Ad. and El. N. S.* 88 ; 14 *M. & W.* 7.

But a protest of a promissory note is not necessary to fix the liability of an endorser, nor is it required or known by the law merchant, and the word " protested" does not, in the case of a note, naturally, or necessarily imply presentment and dishonor, because it merely alleges the performance of an act

which is not generally customary, and is entirely
superfluous. *Platt vs. Drake*, 1 *Doug.* 376 ; *Bk. U.*
*S. vs. Leathers*, 10 *B. Mon.* 64 ; *Nichols vs. Webb*,
*Wheat.* 326.

Nor was the notice sufficient, by the law of the
State of New York. The rule of the law merchant
prevails there. The cases *Reedy vs. Siexas*, 2 *J. R.*
337 ; *Bk. Rochester vs. Gould*, 9 *Wend.* 279 ; *Remer
vs. Downer*, 23 *Wend.* 620, *and* 2 *Hill* 589, were all
cases of misdescription, want of diligence or other
irregularity.

The cases of *Cayuga Co. Bk. vs. Warden*, 1 *Comst.*
419 ; *Mills vs. Bk. U. S.*, 11 *Wheat.* 431, are cases
in which the plaintiffs were holders of notes payable
at their banks. No demand was necessary ; this
distinction is taken by the court in *Dole vs. Gold*,
5 *Barb.* 490 ; *Smith vs. Whiting*, 12 *Mass.* ; *Clark
vs. Eldridge*, 13 *Met.* 96 ; *Pinkham Ex. vs. Macy*,
9 *Met.* 174 ; *Gilbert vs. Dennis*, 3 *Met.* 495. [The
counsel for the defendant commented at length upon
the distinction here taken in respect to notes payable
at banks, &c., and urged that the authorities cited by
the plaintiff, and especially *Mills vs. Bk. U. S.*, did
not apply to this case.]

Nor can the admissibility of the certificates of the
notary be sustained by the statute of New York.
The operation of that statute is merely local, and
directory to the courts of that State in regard to a
rule of evidence. The only other ground upon which
they can be admitted, is *ex comitate gentium*. But
this does not apply to any acts except those which
are performed in pursuance of the *law mercatoria*, or
law of nations. *Schoneman vs. Fegley*, 7 *Barr.* 433 ;
*Elting vs. Schuylkill Bk.* 2 *Barr.* 355 ; *Carter vs.*

*Burley,* 9 *N. H.* 558 ; *Bk. Rochester vs. Gray,* 2 *Hill,* 227 ; *Union Bk. vs. Hyde,* 6 *Wheat.* 572.

Proof that the note was presented " after banking hours," to some one in attendance at the place of payment, is not due proof of presentment. Proof of demand and notice must be strict ; a mere probability that demand was made, and at the proper time, is not sufficient. *Martinis vs. Johnson,* 1 *N. J.* 239 ; *Lockwood vs. Crawford,* 18 *Conn.* 361; *Robinson vs. Glen,* 2 *App.* 109 ; *Cayuga Bk. vs. Hunt,* 2 *Hill,* 635; *Wynn vs. Alden,* 4 *Denio,* 163 ; *Smedes vs. Utica Bk.* 20 *J. R.* 381.

The court did not err in refusing the instructions asked by the plaintiff, the sufficiency of notice being a question for the court, there being no conflict of evidence. *Ransom vs. Mack,* 2 *Hill,* 687 ; *Bk. of Columbia vs. Lawrence,* 1 *Pet.* 578.

*By the Court,* CRAWFORD, J. This case comes before us by a writ of error to the Circuit Court for the county of Milwaukee. The plaintiff in error, as endorsee of the two promissory notes, commenced an action of trespass on the case upon promises against the defendant in error as endorser. The notes were given by J. A. Arnold, payable to . the order of J. E. Arnold, (the defendant in error) at No. 44 Cedar street, in the city of New York, and were each for the sum of five hundred and ten dollars and thirty-six cents, payable three months after date.

It appears that these notes, having been endorsed by the defendant in error, were severally duly presented for payment at No. 44 Cedar street, New York, on the third day of grace, and were protested for non-payment, and notices of dishonor of such note depos-

ited in the post office of the city of New York, di-
rected to "J. E. Arnold, Milwaukee, Wis.," on the
same days on which the protests were made.

At the trial below, the plaintiff introduced the two
notes, which were read in evidence, and to prove the
protests and notices thereof, he produced the deposi-
tion of Harmon C. Westervelt, who testified that he
was a notary public residing in the city of New York;
that, as such notary, on the ninth day of January,
1846, being the third day of grace on one of the
notes, he presented the same at No. 44 Cedar street,
in the city of New York, to a man attending at that
place, and demanded payment, which was refused;
and that, on the same day, after such presentment and
refusal, he duly protested the note for non-payment,
and deposited a notice of protest in the post office at
New York, as above stated. He also testified that, on
the 23d day of January, 1846, which was the third
day of grace on the other note, he made presentment
and demand of payment of the same, at 44 Cedar
street, to a man attending at that place, which was
refused; and thereupon, and on the same day, he duly
protested the note, and gave notice of such protest, as
in the other case. He states that these notices were
directed to "J. E. Arnold, Milwaukee, Wisconsin," and
that each of them stated, "in substance, that the note
had that day been protested for non-payment, and
that the holders looked to him" (Arnold) "for pay-
ment," and that "the notice gave a description of the
note." Attached to the description are copies of the
formal protest in each case.

The counsel for the plaintiff below also read in ev-
idence that portion of the Revised Statutes of the State
of New York which declares that promissory notes

JUNE TERM,
1853.

Brewster
vs.
Arnold.
" shall have the same effect, and be negotiable in like manner as inland bills of exchange, according to the custom of merchants," (*vol.* 1, *p.* 768;) and also those portions which authorize notaries to protest bills of exchange and promissory notes for non-acceptance and non-payment, and the effect to be given in actions at law to the certificate of the notary.

There is no doubt of the presentment, non-payment and due protest of these notes ; but the question presented for our decision is, whether the notices of protest testified to by the notary public were sufficient, and there being no dispute about the facts, this was properly a question of law to be decided by the court. *Vide Remer vs. Downer,* 23 *Wend.* 620 ; *Ransom vs. Macy,* 2 *Hill,* 588 ; *Dole vs. Gold,* 5 *Barb.* 490; *Wynn vs. Alden,* 4 *Denio,* 163; *Dryden vs. Dryden,* 11 *John.* 187; *Van Hoesen vs. Van Alstyne,* 3 *Wend.* 75.

The requirements of notices of protest of bills of exchange and promissory notes, have very frequently occupied the attention of the American and English courts, but in every instance the difficulty has been found in applying a well defined rule of law to the particular circumstances of the case, and not in ascertaining what that rule was. The object of the notice is, to apprise the several antecedent parties that the bill or note has been dishonored, and for this purpose no particular form has been provided ; but whatever mode of expression will distinctly, or by a fair or necessary implication, inform the party that the bill or note in question has been dishonored, that is to say, that payment or acceptance, as the case may be, has been refused ; and that the holder looks to the party for indemnity, may be adopted and has been uniformly held to be sufficient. " No particular form of no-

June Term, 1853.

Boewster vs. Arnold.

tice is required ; all that is necessary is to apprise the party of the dishonor of the bill in question." (*Byles on Bills of Exchange and Prom. Notes*, 156.)

"No precise form of words is necessary to be used on such occasions. Still, however, it is indispensable that it should either expressly or by just and natural implication, contain in substance the following requisites :

1. A true description of the note so as to ascertain its identity ;

2. An assertion that it has been duly presented to the maker at its maturity, and dishonored ;

3. That the holder, or other person giving the notice, looks to the person to whom the notice is given for re-imbursement and indemnity." *Story on Prom. Notes*, sec. 348 ; see also *Story on Bills*, sec. 390.

This is the rule of law, as laid down and recognized by all the cases. Let us enquire how it has been applied in some of them. In the case of *Solarte and others vs Palmer and another*, 7 *Binge*. 530, the attorneys of the plaintiffs wrote to the defendants that the bill (describing it) had been put into their hands by the plaintiffs, with directions to institute proceedings at law for the recovery thereof, unless immediately paid, and the court held that this letter did not contain sufficient notice of dishonor. This case was afterwards taken to the House of Lords, where, in affirming the judgment of the Exchequer Chamber, Mr. Justice Parke pronounced the unanimous opinion of the judges, " that the letter of the plaintiff's attorneys did not amount to notice of the dishonor of the bill ; as such notice ought, in express terms, or by necessary implication, to convey full information that the bill had been dishonored." 1 *Bing. N. C.* 194.

17

In *Boulton vs. Welsh*, 3 *Bing. N. C.* 688, the notice described the note and stated that it had become due the day preceding the notice, and had been .returned unpaid. It also contained a demand or request of payment.

The court held the notice insufficient, assigning, among other reasons, that the facts stated in the notice were compatible with an entire omission to present the note to the maker. This case was decided in the Court of Common Pleas, on the authority of *Hartley vs. Case*, (4 *Barn. and Cress.*, 339,) and *Solarte vs. Palmer*, cited above; but in the Court of Queen's Bench, in the case of *Robson and another vs. Curlewis*, (1 *Carr and Marsh*, 378,) where the language of the notice was almost identical with that used in *Boulton vs. Welsh*, it was held to. be sufficient. The notice was, "Your draft upon Mr. G. C. for £50 due, &c., *is returned to us unpaid*, and if not taken up in the course of this day, proceedings will be taken, &c.;" and the court seemed to have proceeded upon the ground that the terms *"returned unpaid"* necessarily conveyed the idea of presentment and dishonor. This case was again heard at the next ensuing term (2 *Adol. and El.*, *N. S.*, 421), and an attempt was made by counsel to distinguish between the effect to be given to the terms *"returned unpaid"* and "dishonored," but the court adhered to its former decision.

In looking into the several cases in the English courts, it becomes obvious that the Queen's Bench and Common Pleas have often differed in their application of this rule of law; but the result of all the cases is that, when presentment and non-payment (or non-acceptance) are distinctly stated, or when the *legal consequence* of these two ingredients are so stated as ne-

cessarily to imply their existence, it will be sufficient.

In a case before Mr. Justice Patteson, (*Phillips vs. Gould*, 8 *Carr and P.*, 325,) where the notice stated "the bill of exchange, &c., *lies at my office, due and unpaid*," he held it to be insufficient; but the person who sent the notice having testified that on the same day he met the defendant and told him that the bill had come back *dishonored*, and showed him the bill with the *notary's mark* on it, the learned judge held that this notice was sufficient, and that either presentment and dishonor, or *words equivalent thereto*, were necessary to be stated in a notice. So, also, in *Strange and others vs. Price*, (10 *Ad. and El.*, 125.)

Mr. Justice Coleridge says: "The cases referred to in which the notices have been held good, were distinguishable from that (*Solarte vs. Palmer*, before cited) by the word 'returned' or 'dishonored,' or by a reference to *notarial charges.*" *Stockton vs. Collins* (9 *C.*, 653) is another case in which the words "has been dishonored" have been held sufficient.

The words, "the bill is this day returned with charges," were held to be good notice in *Grugeon vs. Smith*, (6 *Ad. and El.*, 499.) The cases of *Parge vs. Sherwood and others*, 2 *Ad. and El., N. S.*, 388,) and *King vs. Bickley*, (*id.*, 419,) are to the same effect, although the latter case was decided upon the sufficiency of the notice in another respect.

When the words "returned unpaid" are used, we think it would be difficult to arrive at any other conclusion than that the bill or note had at least been sent somewhere for payment, and yet it may not have been in fact presented.

Here (we may admit) the implication of present-

ment and refusal is by no means irresistible or necessary, but when these words are coupled with others which indicate that a notary public, whose business and duty it is to demand payment and make protest of bills and notes, has acted in the matter, the presumption, we think, is just and natural, that the bill or note was *returned unpaid* because the party neglected or refused payment, and that the bill or note was properly presented.

The term "dishonored," when used, embraces all that is required, for how could a note be dishonored if not presented on the day and at the place where it was made payable, or if payment were not neglected or refused. Webster defines the word "dishonor" to be, to refuse or decline to accept or pay, when it is used in a commercial sense, and Mr. Bouvier, in his Law Dictionary, gives it a similar meaning. In *Shelton and others vs. Braithwaite*, (7 *Mees. & Wel.* 436,) the Court of Exchequer held that the word "dishonored" had a technical signification, and imported that the bill had been presented for payment and had not been paid. The same ruling was made in *Rowlands vs. Springett*, (14 *Mees. & Wel.* 7,) and in *Strange vs. Price*, and *King vs. Bickley*, before cited.

In the American courts, this question has been frequently presented, and the recent English decisions which we have referred to, have been generally approved of. In Massachusetts, it was held that mere notice of non-payment, *which did not express or imply notice of dishonor*, was insufficient. (*Gilbert vs. Dennis*, 3 *Met.* 495.) And in a subsequent case, *Pinkham, Executrix vs. Macy*, 9 *Met.* 174,) the same court ruled that the words "*remains unpaid*," in the notice, might be strictly true, and yet the note might not have been presented or payment demanded.

June Term,
1853.

Brewster
vs.
Arnold.

But we may here observe, that whenever the bill or note is made payable at a bank, the usage of commerce has created a rule of law in this respect, which renders a notice of non-payment, as in the case last cited sufficient, provided it has been given after banking hours, on the third day of grace, because the endorser may be presumed to know the terms of the bill or note endorsed by him, and that it is incumbent on the maker or acceptor to pay it at the time and place, and, therefore, notice of non-payment is equivalent to notice of dishonor.

In the case now before us, the decision of the American courts afford us more direct authority, inasmuch as we find cases in which the notices have been in the same form as in the present case.

Mr. Justice Story, in *Mills vs. The Bank of the United States*, 11 *Wheat.* 431, in treating of an objection, that the notice did not state that payment was demanded, says : " It is certainly not necessary that the notice should contain such a *formal* allegation." It is true this was the case of a note payable at bank, but the notice stated that the note had been " *protested for non-payment* ;" and we will presently see what the import of this language is.

In *Pinkham, executrix, vs. Macy*, (before cited) Chief Justice Shaw says : " A case may happen where a reference to a protest, by a notary public, which term" (protest) " *implies a demand and refusal, may be important because it intimates, by implicaion, that the note has been dishonored.*"

So in the case of *Coddington vs. Davis, and others*, 1 *Comst.* 186 ; Mr. Justice Gardiner uses the following language : " The term protest, in a strict technical sense, is not applicable to promissory notes. The

JUNE TERM, 1853.

Brewster
vs.
Arnold.

word, however, as I apprehend, has by general usage acquired a more extensive signification, and in a case like the present," (which was a suit against the endorser of a promissory note,) "includes all those acts, which by law, are necessary to charge an endorser. When, among men of business, a note is said to be protested, something more is understood than an official declaration of a notary." The cases in the 9th and 23d vols. of Wendell, cited at the bar, are not apposite in this case, as they were disposed of on other points, but in the case of *Spies vs. Newberry*, 2 *Doug. Mich. R.* 425, to which we have been referred, we find a clear definition of the legal import of the terms "protested for non-payment," thus : "A protest is a constituent part of a bill of exchange, indispensably necessary to be made, to entitle the holder to recover the amount from the other parties to the bill, is, by law, made evidence of presentment and dishonor. The words *protested for non-payment*, in this way, have come to have a technical meaning in matters of this nature.

In them is included, not only the idea that the bill is past due, but that payment of it has been demanded, and not being paid, it is therefore dishonored. They mean that the process necessary to dishonor the bill, to-wit : demand, refusal of payment, and the drawing up of a formal protest, has been gone through with. All this is included in, and meant by the term protested."

If the case before us were upon a foreign bill of exchange, there could be no doubt that the notice would be ample, and it only remains to ascertain if there be really any difference between the case of a bill of exchange and that of a promissory note.

It is quite clear that by the common law, no formal protest of an inland bill of exchange or promissory note is requisite. *Byles on Bills of Ex.* 145–149 ; *Chitty on Bills,* 501 ; *Story on Promis. Notes, Sec.* 297. But in many of the commercial cities of this Union, it is customary to have presentment and protest of promissory notes, made by notaries public, and although this may not change the general law, as to the necessity of protest, yet it is said to be important, as affording evidence, in case of the notary's death, of due presentment and notice. (*See Story on Prom. Notes, Sec.* 297.) Although protest may not be essential in such cases to constitute the liability of the endorser, yet we apprehend that the same kind and degree of evidence to establish the same matters of fact, ought to be admissible and adequate in the one case as in the other. In the case of a foreign bill, a protest is an essential ingredient to establish the endorser's liability, but this protest can only be had after presentment and non-payment, or non-acceptance, and these latter facts are deemed evidenced by the protest.

But in a case like the present it is not the fact that a solemn protest has been made, but the facts necessarily preceding and included in the act of protesting, which are sought to be established ; and if the term *protested* should be construed in the case of a bill, to mean and convey the idea of presentment and refusal to pay, it is difficult to perceive why it should not have the same effect in the case of a promissory note. In either case the notice describes the instrument upon which the payment was sought, and that because payment was not obtained, it was *protested.* Without a demand and refusal, or neglect to pay, there could be

no protest legally made, except in case of a bill or note payable at bank, and this rule of law, it is presumed, is known to every man. Hence, we think that when the notary swears he mailed notices, that these notes have been protested for non-payment, the reasonable and legal effect was to apprise the endorser that they were presented for payment and were not paid. This was enough to fix his liability, and of this he was informed. Suppose that instead of the written notices, the notary public had, on the days of the dishonor of these notes, met the endorser and informed him that he had protested them for non-payment, which would be equivalent to informing him that he had presented each note at the time and place, and that payment was refused, (as in *Phillips vs. Gould, supra*,) would not such personal notice have been good? The case of *Platt vs. Drake*, 1 *Doug. Mich. R.* 296, is strongly in point in favor of the defendant in error, but we cannot concur with the learned judge who gave the opinion in that case, when he confines the idea communicated by the words "protested for non-payment" to the mere act of preparing a formal instrument, called a protest. Indeed, the same court afterwards, in the case of *Spies vs. Newberry*, (cited above,) defined the terms altogether more reasonably, and, to our minds, in conflict with the view taken in *Platt vs. Drake*, notwithstanding the attempt to make a distinction between the cases. It is true, one of these cases was that of a promissory note, while the other was that of a foreign bill of exchange, and to this extent the cases differed ; and the fact that there was no statute in Michigan authorizing the protest of promissory notes, furnished a reason why the notary's act in giving notice of protest, and in making the pro-

test was not an official one within the line of his duty
as a public officer, but still the information communi-
cated by the use of certain words, which have a well
known signification in our law and language, in one
case must be the same that precisely similar words will
communicate in another case.

The decision of *Platt vs. Drake*, seems to have
turned upon the immateriality of protest in case of a
promissory note, and that *protested for non-payment*,
simply implied that a formal *protest* had been pre-
pared by a notary.

When it was shown in that case that the notice was
actually given to the endorser, whereby he was in-
formed that the note endorsed by him had been pro-
tested for non-payment, with the legal import which
we deem pertains to the terms, the effect of that deci-
sion was that the notary could not communicate in-
formation of his acts in demanding payment, to the
endorser, so as to affect him.

We admit that the protest itself, in case of a prom-
issory note by the general commercial law, would not
be evidence of the fact of presentment, nor would no-
tice of protest be evidence of such presentment even
in case of a foreign bill of exchange. In either case,
this would be matter to be proved, and the difference
between the cases is in the kind of evidence. In one
case, the protest would be evidence of presentment and
non-payment, while in the other case, these facts would
be required to be proved *aliunde*.

It is certain, however, that Judge Story speaks of
a notice of non-payment, as necessary in case of dis-
honor of a promissory note, and describes the essen-
tials of this notice in the same manner that we find a
notice of dishonor, in case of a bill of exchange de-

scribed, and the notice is intended to answer the same purpose in both cases. (*Story on Prom. Notes,* § 347.) We are not now discussing the effect of a notarial certificate, as evidence, but the effect of the language used to convey information of certain events; for in this case the evidence of notice did not depend upon the certificate of the notary; he was called in person, and deposed to the giving of notice by mail. In *  * vs. *Levering,* (6 *Wheat.,* 102,) which was the case of an inland bill of exchange, a notice of *non-payment and protest* was given by a notary, and no other evidence of demand or notice was offered.

The Supreme Court of the United States gave an unanimous opinion that this notice, put into the post office, was good. The same court at the same term, in *Lindenberger et al., vs. Beall,* (6 *Wheat.,* 104,) which was the case of a promissory note, held a like notice by mail sufficient.

In the case of *Nicholls vs. Webb,* (8 *Wheat.,* 326,) a promissory note was protested for non-payment by a notary public, who died before the trial. On the record of his notarial acts, he had been in the habit of making *memoranda* of notices to endorsers, and in that case, in the margin of the copy, had written, " Endorser duly notified in writing." Copies of the protest and of this memorandum had been verified by the deposition of the daughter of the notary, who had charge of her father's records since his death. The court held that this notice of dishonor was sufficient.

" It does not appear," says Mr. Justice Story, in delivering the opinion of the court, " that, by the laws of Tennessee, a demand of payment of promissory notes is required to be made by a notary public, or a protest made for non-payment, or notice given by a notary to

the endorsers. And, by the general commercial law, it is perfectly clear that the intervention of a notary is unnecessary in these cases. The notarial protest is not, therefore, evidence of itself, in chief of the fact of demand, as it would be in cases of foreign bills of exchange, and in strictness of law it is not an official act·

"But we all know, that in point of fact notaries are very commonly employed in this business, and in some of the States it is a general usage so to protest all dishonored notes, which are lodged in or have been discounted by a bank. ,

" The practice has, doubtless, grown up from a sense of its convenience," &c.

In this case it was held that the protest, if established by the deposition of the notary himself, would have been evidence of demand and notice, and that the copies, authenticated by the deposition of his daughter, were admissible as secondary evidence conducing to prove the same facts.

There are many other cases in the reports, in which notices that promissory notes have been protested for non-payment, have been deemed sufficient, when proof of such notices (given in person, or sent by mail, in due time, by notaries) has been made, beyond the mere certificate of the notary himself, as where he has been called as a witness to prove the giving or sending of the notice.

On this point, there can be no objection in the case now before us, because the proof of sending the notice, did not rest upon a certificate, but was made by his deposition. These notes were made and endorsed in New York, payable there ; so that the statutes of that State, giving to promissory notes the negotiability and effect of inland bills of exchange, was a part of

JUNE TERM, 1853.

Brewster
vs.
Arnold.

the law of the contract, and those statutes authorized the protesting of such notes for non-payment by a notary public. It was, therefore, strictly an official act in New York, which might be evidenced in the courts of that State by the certificate of the notary, in pursuance of their local law. So far, however, as this law established a rule for evidence, it is confined in its operation to the State of New York, and cannot affect the law of evidence with us.

We know of no provision of our own statutes which reaches the point, so that the ordinary rules of evidence apply with the exception that no notice to produce the letter or written notice of dishonor is necessary, in order to warrant secondary evidence of its contents. (2 *Greenl. on Ev.*, *Sec.* 191.)

The parol testimony of the notary public was sufficient to prove the contents of the notice which he sent by mail. It would be difficult to assign a satisfactory reason, why the protest of a notary, under his seal of office, and in due form, should not be sufficient evidence of the same facts in a case like the present one, as in cases of foreign bills of exchange? The objection to be found in the books, that it is not an official act, authorized by law, cannot apply, for it is in this case an authorized official act, by the laws of New York, and the language used by Judge Story in *Nichols vs. Webb*, seems to imply that if a local law of the place of the contract, had required a protest, it would have changed the rule of law, as to the effect of the protest as evidence. In the opinion given by that eminent jurist in the case just referred to, he says: " We think it a safe principle, that memorandums made by a person in the ordinary course of his business, of acts or matters which his duty in such business, requires

JUNE TERM,
1853.

Brewster
vs.
Arnold.

him to do for others, in case of his death, are admissible evidence of the acts and matters so done.

"It is, of course, liable to be impugned by other evidence, and to be encountered by any presumptions of facts which diminish its credibility or certainty. .

" A *fortiori,* we think the acts of a public officer like a notary public, admissible, although they may not be strictly official, if they are according to the customary business of his office, since he acts as a sworn officer, and is clothed with public authority and confidence."

A notarial protest receives credit in all courts and places, by the law and usage of merchants without any auxiliary evidence. (3 *Kent's Com.* 93.)

The certificate of a foreign notary, under his hand and seal of office, of the presentment by him of a bill or *note,* for acceptance or payment, and of his protest thereof for non-acceptance or non-payment, is received in all courts, by the usage and under the courtesy of nations, as presumptive evidence of the facts. (*Chitty on Bills,* 642.)

This case is one of importance, in its bearing upon commercial transactions, and for this reason we have deemed it proper to examine it somewhat at length.

The result of our examination satisfies us that the notices of non-payment and dishonor of the note, in this case, were sufficient, and that the terms "protested for non-payment," whether used in case of a foreign or inland bill, or promissory note, are equivalent to the statement of presentment for payment, and refusal, and are sufficient to render the endorser liable.

We must hold that the Circuit Court erred in its instruction to the jury on this point, and in refusing

[JUNE TERM, 1853.

to give the instruction asked by the counsel for the plaintiff below.

The judgment of the Circuit Court must therefore be reversed, and the cause remanded for a new trial.