THE BANK OF COOPERSTOWN *v.* JONATHAN L. WOODS
and others.

Where the complaint described the note sued on as being made by " Orrin
North," and the note offered in evidence appeared to have been made by
a *firm*, consisting of two persons, doing business under the name of " Or-
rin North ;" *Held* that an objection to the reading of the note and protest in
evidence was properly overruled.

An offer to prove other outstanding notes of the same amount as the one in
suit, with the like maker and indorsers, and place of payment as the one
in suit, and maturing at various times between February and August, was
*held* properly overruled; where the defendants had permitted the note in
suit to be read without objection to the protest, and without a motion for
a nonsuit, and without stating that the object of the proof was to show
that the notice of protest was too indefinite, and might be applied to some
one of the numerous notes thus offered to be proved; nor was there any
request to charge the jury as to the effect of the notice of protest, or
any objection made thereto.

*Held, also*, that the offered evidence did not go far enough to raise a question
as to the sufficiency of the notice of protest; there being no proof, or
offer to prove, that any one of the several notes (other than the one in
suit) was held by the plaintiff, or matured at or about the time of the

one in suit, or was ever protested, so as to be capable of being confounded with the one in suit.

A notice of protest dated the day on which a note matures, stating that a promissory note drawn by O. N., for $1000, and indorsed by the person to whom the notice is sent, "*is* protested" for non-payment, is a sufficient description of the note, in connection with the facts that no other note of similar amount fell due on that day; that no other notes were held by the plaintiff; and that no others were in fact protested. And will be construed as referring to the day of the date of the notice, as the day when the note was protested.

The true principle is, that if facts exist which render such a notice uncertain or equivocal, and the knowledge of these facts is confined to the indorser, or is not brought home to the holder of the paper, the notice is sufficient to charge the indorser. *Per* DENIO, Ch. J.

The principle of the case of *Cook* v. *Litchfield,* (5 Seld. 279,) ought not to be extended.

The true rule is as stated by Judge DENIO, in *Home Insurance Co.* v. *Green,* (19 N. Y. Rep. 118,) that a notice of protest should reasonably apprise the party of the particular paper on which he is sought to be charged.

A printed notice of protest, including the signature of the notary, is sufficient.

APPEAL from a judgment of the Supreme Court, in favor of the plaintiff. This action was against the defendant North, as the maker, and the defendants Woods and Dayton, as indorsers of a promisory note signed "Orrin North," dated June 15, 1857, payable to the order of the defendant Woods, at the office of Townsend, Clark & Co., 180 Broadway, New York, sixty days from date, for $1000. The complaint alleged that the note was made by the defendant North. The defendants Woods and Dayton (who only have appealed,) answered separately, denying every allegation of the complaint, and each annexed to his answer his affidavit denying the fact of having received notice of the non-payment of the note. The action was tried at the Otsego circuit, December 25, 1857. On the trial the plaintiff proved that the signature "Orrin North" to the note was the handwriting of the defendant North, but that at the time the note was made, North was engaged in business as a partner with one Elias B. Holmes, under the firm name of "Orrin North;" that the note was given in the business

of that firm, and was intended as the note of the firm, and that the plaintiff was informed that it was so given and intended before this suit was commenced. The plaintiff further proved that the defendants Woods and Dayton indorsed the note for the accommodation of the makers; that the note at its maturity was presented for payment at the place where it was payable, and payment demanded, and that notices addressed to the defendants at their respective places of residence were on the same day deposited in the post office in the city of New York, which notices were in the words and figures following:

"*New York, Aug.* 17, 1857.

SIR: Please take notice, that a promissory note drawn by Orrin North for 1000 dollars, indorsed by you, is protested for non-payment, and that the holders look to you for payment thereof.

Your obedient servant,
A. R. ROGERS, *Notary Public.*"

The notices were printed, and filled up in writing, and the name of "A. R. Rogers," was printed at the bottom of each. The plaintiff thereupon offered to read the note in evidence, which was objected to by the defendants severally, on the ground that the evidence showed the note to be the note of the firm of "Orrin North," and not the individual note of the defendant North, as set out in the complaint, which objection was overruled by the court, and the defendants severally excepted. The plaintiff having rested, the defendants Woods and Dayton, offered to prove that when the note in suit matured, two other notes were outstanding, of the same date, (June 15, 1857,) for $1000 each, made by North, and payable to the order of Woods, and indorsed for the makers' accommodation by Woods and Dayton, both payable in New York; one maturing July 23, and the other August 2, 1857. To which the plaintiff objected, for the reasons set forth in the case, and the court sustained the objection and

excluded the evidence, and the defendants Woods and Dayton excepted. The defendants Woods and Dayton further offered to. proved that from January 6 to July 16, 1857, they indorsed twenty-seven other notes made by. North, and for his accommodation, for $1000 each; six of which were dated on different days in January, six on different days in February, five on different days in March, seven on different days in April, three on different days in May, six on different days in June, and five on different days in July, all in 1857; thirty-three of which were payable in New York, and they matured on different days in said months, and in August of that year. To proving which the plaintiff objected as above, and the court sustained the objection and excluded the evidence, and the defendants Woods and Dayton excepted. The jury found a verdict for the plaintiff for $1025.58, the amount of the note. The defendants Woods and Dayton made a bill of exceptions containing the above exceptions among others, and judgment having been entered on the verdict, Woods and Dayton appealed therefrom to the general term. The appeal was first heard at a general term in the 6th district, before Justices MASON, GRAY, BALCOM and CAMPBELL, in July 1858, and the court was equally divided; Justices MASON and GRAY being for reversing, and. Justices BALCOM and CAMPBELL for affirming the judgment; and a re-argument was ordered. The appeal was again heard in the same district, in May 1859, before Justices MASON, BAL- COM and CAMPBELL, (Justice GRAY being then in the Court of Appeals,) when the judgment was affirmed, Justice MASON dissenting. From this judgment of affirmance the defendants Woods and Dayton appealed to this court.

*Geo. C. Greene* and *John T. Murray,* for the appellants.

I. The court below erred in overruling the objection to the reading the note in evidence. The note set out in the complaint was one made by the defendant North, while the

one proved and offered in evidence was made by Orrin North and Elias B. Holmes, being an entirely different note. The variance was a fatal one, and as the plaintiff did not ask to amend the complaint, the note should not have been received in evidence.

II. The court erred in excluding the evidence offered by the defendants Woods and Dayton, that there were other notes outstanding at the time the note in suit matured, made by Orrin North and indorsed by Woods and Dayton as accommodation indorsers, each answering the description contained in the notice of protest, but differing from the note in suit in essential particulars, to wit, in date, time of payment, two of them bearing the same date with the note in suit, but differing in times of payment, and the others differing both in dates and times of payment. A notice of the dishonor of commercial paper, to be sufficient to charge the indorser, must inform the indorser of all the facts requisite to make him liable. It must state that the *identical note in question* has been, on the day it matured, presented for payment, at the place where payable, &c. A notice which falls short of this is defective on its face. It is as requisite that the particular paper intended should be identified by the notice, as that the fact of presentment and non-payment should be stated therein. In this all the authorities concur. That this notice identifies any particular note can not be pretended; as it states no date, or place, or time of payment, each of which is equally with the amount, a distinguishing feature of every promissory note, and this notice would have been equally as good had it stated either, omitting the amount. (*Cook* v. *Litchfield,* 5 Seld. 279; *Shelton* v. *Braithwaite,* 7 Mees. & Welsb. 436; Story on Prom. Notes, § 349; Chit. on Bills, 8th Am. from 8th Lond. ed. 501, n. p.) It is true that in *Youngs* v. *Lee,* (2 Kern. 551,) it was held that an indorser was charged by a notice precisely similar to the notice in this case. It was not, however, so held on the ground that the notice was sufficient of itself, but because

the facts stated in the notice in connection with the knowledge that the law presumed the indorser had, independently of the notice, in the absence of proof to the contrary, gave him information of all the facts necessary to charge him. The court, in that case, in effect say, the notice informs the indorser that a note indorsed by him has been dishonored, and as, in absence of proof to the contrary, the law does not presume that he has indorsed any other note, the notice in connection with the indorser's knowledge that but one note indorsed by him is in existence, informs him that the particular note in question is dishonored. But in this case the defendants offered to show that other notes were outstanding, differing from the note in suit, in various particulars, but which were each and all as perfectly described and identified by the notice as the note in question. The notice did not therefore identify to the mind of the defendants the note dishonored. In *Shelton* v. *Braithwaite, supra,* Park, B. says: "If there was another bill answering the same description, the defendant *might have proved that fact,* and then the notice would have been uncertain." In *Cook* v. *Litchfield, supra,* Ruggles, Ch. J. says: "One of the indispensable requisites of the notice to be given to the indorser, of the dishonor of a note is, that it should, either expressly or by just and natural implication, contain in substance a true description of the note, so as to identify it to the mind of the indorser. * * A notice which is barely sufficient to put the indorser upon inquiry is not sufficient. The note should be sufficiently described to enable the party to know what note it is. (*Remer* v. *Downer,* 23 Wend. 626; Story on Prom. Notes, § 349.)" In this case Ruggles, Ch. J. quotes from and approves of the decision in *Shelton* v. *Braithwaite,* (*supra,*) and then says: "There are several other cases in which *an imperfect or erroneous* description has been held sufficient, on the same ground that the party could not be misled or mistaken in regard to the meaning of the notice, and *the indentity of the bill,* because there was only one

instrument of the kind to which the notice could possibly relate. *But all these cases show that where there are more than one, the notice is bad for uncertainty.* (*Mills* v. *Bank of U. S.*, 11 Wheat. 436 ; *Stockman* v. *Parr*, 11 Mees. & Welsb. 809 ; *Cayuga Bank* v. *Warden*, 1 Comst. 415 ; *Bank of Alexandria* v. *Swan*, 9 Peters, 33.") See *Hodges* v. *Shuler*, (22 N. Y. Rep. 114.) This case can only be distinguished from *Cook* v. *Litchfield* by the fact that in the case cited the plaintiffs held the other notes answering the description in the notice of dishonor, while in this case it did not appear who held such other notes, and the court below, in affirming the judgment in this case, based its decision upon that distinction. But the Court of Appeals, in *Cook* v. *Litchfield*, recognized no such distinction ; its decision is based solely upon the ground that the notice in that case failed to convey to the mind of the indorser the information *that the particular note in question* was dishonored, without regard to whether the holder did, or did not know, of the existence of other facts within the knowledge of the indorser, which, in connection with the notice, would convey to the latter the requisite information. The general rule that a notice of dishonor to be good must give every distinguishing feature of the note, by stating its maker, payee, date, amount and time and place of payment, and that where the notice omits either, *the risk is with the holder whether the requisite information is given to the indorser*, is fully recognized and approved in the case above cited. *Hodges* v. *Shuler*, (*supra*,) recognizes the same rule. If the holder of a note gives a defective notice, he, and not the indorser, runs the risk of its not conveying the requisite information, and no authority can be found, in the least sanctioning the doctrine of the court below, that an indorser must, in order to protect himself against the consequences of a defective notice of protest, see to it, that the holder of every note indorsed by him is informed of the existence and description of every other note outstanding indorsed by him. It would be impos-

sible for an indorser to do this, for he could not know who would be the holder of the notes when they matured. In this case the notice does not state the date of the note, where drawn, when or where, or to whose order payable, or that it was indorsed by any one except the person to whom the notice was given. All the authorities agree that such a notice is defective, and as it did not in this case convey to the indorsers the requisite information, the plaintiff and not the defendants must suffer the consequences thereof. (Chitty on Bills, 8th Am. from 8th Lond. ed. 501; Story on Prom. Notes, § 349; *Wynn* v. *Alden,* 4 Denio, 163.) The plaintiff having the note in its possession could have given a particular description thereof, and had that been done the note in question would have been identified to the mind of the indorser.

III. It was not necessary for the defendants to set up in their answer the want of due notice of the dishonor of the note. The complaint averred that such notice was given, and this averment was material and necessary, and the defendants, by denying each and every allegation in the complaint, put that averment in issue.

IV. The notice of the dishonor of this note was bad for the reason that it was not signed by the notary, or by any one. The name of the notary being printed at the bottom, the notice had no authenticity. Any one might have filled it up.

*A. J. Parker,* for the respondent.

I. The notice of protest was sufficient on its face. The case of *Youngs* v. *Lee,* (2 Kern. 552,) expressly decides that a notice in precisely the same words as this is sufficient. (Also *Cayuga Co. Bank* v. *Worden,* 1 Comst. 413–419.)

II. The evidence offered—that other notes were outstanding of the same amount and with the same maker and indorsers, but due at different times, (none on the same days

as that of the maturity of this note,) was immaterial and insufficient to vary or affect this notice or the plaintiff's rights. 1. The defendants did not offer to show that any of these other notes were held by the plaintiff. The plaintiff holding no other similar note, both the plaintiff and the notary had a right to presume that this was the only note answering the description given, and to frame the notice accordingly. In *Cook* v. *Litchfield,* (5 Seld. 280,) the plaintiff himself held the four similar notes, which rendered the description uncertain, and he was thus called upon to distinguish between them. 2. The notice of protest in *Cook* v. *Litchfield* was materially different from the notice in this case. There were four notes in suit, all precisely alike, except that they matured at different times. The notices of protest were all alike, except in date: each contained a description which was equally applicable to any of the four notes. Each notice stated that the note *was, on the day when the same became due, duly protested, &c.*—thus referring to some uncertain time prior to the date of the notice. This notice states that the note "*is protested,*" and the notice bears date the day the note falls due. This indicates present time and the particular note due that day and no other; and "protest" in its popular sense includes all the steps necessary to charge the indorsers. (*Coddington* v. *Davis,* 3 Denio, 16 ; S. C. 1 Comst. 186.) The Court of Appeals virtually so held in *Youngs* v. *Lee* above cited. Judge Johnson in delivering the opinion of the court, in reference to this same notice, says: "A waiver of protest was held in *Coddington* v. *Davis,* (1 Comst. 186,) to include a demand and all other acts necessary to charge an indorser. Upon the same principle the statement in this notice, *dated on the day when the note was payable,* that it had been protested for non-payment, must be intended to mean that it has been demanded and payment refused, *on the day when it became due.*" It is clear from this language of the court, (speaking of a notice worded precisely like those in this case,) that in their opinion the day when the note fell due, would be inferred from the

terms of the notice, to be the day on which the notice bore
date.　The outstanding notes, therefore, which Judge John-
son thought might render the notice uncertain, could only
be notes *due on the same day* as the one in question.　Our
notices have thus been adjudged to mean that the note *has
been protested this day when due. Beals* v. *Peck,* (12 Barb.
245,) adopts the same reasoning.　The court say, "the notice
is dated December 13, 1849, and stated that the note was
that day protested for non-payment.　The indorser would
therefore understand that it was a note which matured on
that day."　This construction is strengthened by the rule of
evidence, that official duty is always presumed to have been
regularly performed.　(1 Cow. and Hill's Notes, 296, and cases
there cited.)　The present tense—*is* protested—when thus
used by a public officer, who in the regular course of his official
business, has possession of the note for one day only, and for
a single purpose, can only mean, that on this day the date
of his notice, the note executed is protested, *i. e.*, is presented,
payment demanded and refused, and the indorser thereby no-
tified.　It has the same force and meaning as "is ordered"
in an order of a judge or court, indicating a present act.　The
defendants, if one of them had not been a counsellor at law,
could not have been misled.　The law charges them with
knowledge, that they were indorsers of a note of that des-
cription due the day the notice bore date.　They knew also
the notary's duty, and could not have a doubt that this was
the note referred to in the notice.　The notice was not to a
stranger, but to a party who knew what notes he had indorsed.
The plaintiff was a stranger to all the notes except this.　In
the case of *Shelton* v. *Braithwaite,* (7 Mees. & W. 438,) cited
by the appellant's counsel, Baron Alderson says : "The notice
must be construed with reference to the defendant's means of
knowledge, and I think there is enough to show that he must
have felt in his own mind that this was a perfect notice of
dishonor of the bill in question."　It is by similar reasoning,
in principle, that the notice in *Cook* v. *Litchfield* was held

good for the note *first due*, although the description of it applied alike to three other notes.  The judge says, that inasmuch as the notice speaks of a note which "was presented when due," it must be intended to refer to that note which became due "before or on" the day the notice bore date. And as the note first due was the only one that had matured at the date of the *first notice*, that note alone could be intended, and was thus clearly designated in the first notice. So in this case, as our notice speaks of a note which "is protested"—that is, this day protested—it can only refer to that particular note due on the day that such notice bears date. The testimony offered for the purpose of showing similar notes outstanding, *due on other days*, was therefore clearly irrelevant and improper, and was properly excluded, or held insufficient for the purpose offered.  3. In *Cook* v. *Litchfield*, every *notice of protest* was the same.  In our case, the form of the notices on the other notes was not shown nor offered to be shown.  For all that appears from the evidence offered by the defendants, they had received, and they must be presumed to have received, regular notice of protest, identifying every note previously due and not paid, and so they could not have been misled as to the particular note intended by this notice.  Nor did they offer to prove that they were misled.  4. The decision in *Cook* v. *Litchfield*, so far as it holds three of the four notices bad, is one the soundness of which is very questionable, and the court, we think, will not be disposed to extend it to any notice of protest not framed as the one in question there; nor to a case in which neither the holder nor the notary had any notice of the similar notes outstanding.  That decision was made by a bare majority of the court, two judges dissenting and one not expressing any opinion.  The comments on this decision made by the Superior Court, after the second trial, are certainly very forcible and convincing.  (*Cook* v. *Litchfield*, 2 Bosw. 147.)

5. The broad doctrine that a written notice *per se* sufficient on its face can be shown to be bad by proof of other notes to

which it might apply, rests in *obiter dicta* only. It must, if allowed at all, be limited to cases in which the holder has notice of the other similar notes, and is thus called upon to distinguish his note by a *very special description,* or to cases in which the notice relied upon misdescribes the note or does not describe it at all, as was the case in *Shelton* v. *Braith-waite,* before referred to. If the principle contended for by the appellants is sustained, then the rule for giving notice of the dishonor of a note is made so stringent that no notice is really *sufficient* unless it contains an exact copy of the note. Otherwise an indorser might always escape liability by indorsing similar notes, which could only be distinguished from each other by exact copies. But this is not the rule. On the contrary, it is settled by abundant authorities, that a designation of the note, with reasonable certainty, is all that the law requires. (*Ransom* v. *Mack,* 2 Hill, 587; *Reedy* v. *Seixas,* 2 John. Cas. 337; *Cayuga Co. Bank* v. *Warden,* 1 N. Y. Rep. 413, [1 Comst.] S. C. 6 N. Y. Rep. 19, [2 Seld.] *Woodin* v. *Foster,* 16 Barb. 146; *Home Insurance Co.* v. *Green,* 19 N. Y. Rep. 118.) In this case, Denio, J., says: "It is true that no precise form is necessary for these notices, but they must *reasonably apprise* the party of the particular paper upon which he is sought to be charged." It holds, too, that the maker's name is the most distinctive feature of a note, and refers to the notice in *Youngs* v. *Lee* (which is *identical* with ours) as sufficient. Our notice giving the amount of the note, and the name of the maker and indorser, bearing date the day the note matured, and using the present tense, "is protested," is surely *reasonably certain.* If such a notice is made uncertain by the act of the indorser in putting his name upon other notes all answering to the same *reasonable* description, *it is his fault,* and the law will not be guilty of the injustice of charging this uncertainty upon the innocent holder or notary. (*Hodges* v. *Shuler,* 22 N. Y. Rep. 114.) 6. The notice of protest could not apply to the two notes mentioned in the first offer of the defendants; for

the last of them had matured fifteen days previously, and if no notice had been given before, the indorsers were discharged as to them.   The notice of protest could not apply to either of the 38 notes mentioned in the two subsequent offers, for the defendants did not give the date nor time of payment of either; nor did they offer to show that it would apply to either.   7. The object of the notice is "to enable the indorser to take measures for his own security." (Edwards on Bills, 289.)   Suppose there are two notes precisely alike as to amount, dates, parties, &c., and the notice would be equally applicable to either.   The object of the notice is accomplished, by enabling the indorser to know the amount he must get secured to him by the maker.   If the notices are served he must get double the amount.   If notice of one note only is served, he has no occasion to get more than the amount of one note secured, being discharged as to the other; and it makes no difference to him to which note the notice applies, or whether he knows which note is intended in the notice.

III. The objection that the notary's signature is *printed* is clearly frivolous.   Even a verbal notice communicated by any one acting on behalf of the holder is sufficient. (*Cuyler* v. *Stevens,* 4 Wend. 566.)

IV. The judgment should be affirmed with ten per cent damages.

HOGEBOOM, J.   1. The only objection made to the reading of the note and protest in evidence, (the $1000 note,) to wit, that it was the note of a *firm* by the name of "Orrin North," instead of an *individual* of that name, was properly overruled.   The complaint described the note as made by Orrin North, and this was true, whether it was the firm or the individual.

2. The offer to prove other outstanding notes of the same amount as the one in suit, with the like maker and indorser, and place of payment as the one in suit, and maturing at various times between the months of February and August

inclusive, was properly overruled for several reasons. (1.) The defendants had permitted the note in suit to be read without objection to the protest, and without a motion for a nonsuit, and without stating at any time in the progress of the suit that the object of the proof was to show that the notice of protest was too indefinite and might be applied to some one of the numerous notes thus offered to be proved. Nor was there any request to charge the jury as to the effect of the notice of protest, or any objection made thereto. (2.) If the question of the sufficiency of the notice of protest was sufficiently made at the trial, the offered evidence did not go far enough to raise a question on this subject. There was no offer or proof that any one of these various notes (other than the one in suit) was held by the plaintiff. There was no offer to show that any one of them matured at or about the time of the one in suit. And apparently such was not the fact. There was no offer to show that any one of these various notes, (other than the one in suit,) was ever protested. None of them, therefore, could be confounded with the one in suit.

3. The notice of protest, though much more general than a cautious and prudent notary public should ever give, has been held sufficient within the adjudications of our courts. A similar notice was approved in *Youngs* v. *Lee*, (2 Kern. 552.) See also *Cayuga Co. Bank* v. *Warden*, (1 Comst. 413.)

The case of *Cook* v. *Litchfield*, (5 Seld. 279,) is not in point to sustain this defense. In that case all the notes were held by a single party; and the notices of protest were alike except in date, and apparently referred to a day past, (without specifying it,) as the day when the notes matured.

This notice uses the present tense; saying the note "is protested," apparently referring to the day of the date of the notice as the day when the note was protested, and describes the amount of the note, and the name of the maker, and is addressed to the indorser. Couple this with the facts (which for the purposes of this case we must assume) that

no other note of similar amount fell due on that day; that none of the other notes were held by the plaintiff; that none of them were in fact protested, and the inference is irresistible that the indorser could not have been misled.

As the main object of the notice is "to enable the indorser to take measures for his own security," (Edw. on Bills, 289,) it would appear to have been sufficiently subserved by this notice. The principle of the case of *Cook* v. *Litchfield*, (5 Seld. 279,) ought not to be extended. . The true rule is as stated by Judge DENIO in *Home Insurance Co.* v. *Green*, (19 N. Y. Rep. 518,) that the notice should reasonably apprise the party of the particular paper on which he is sought to be charged. When the notice contains the particulars specified in this notice, it can never be known that it does not so apprise him, without proof of extrinsic facts. And when these are presented, we are entitled to look at all of them to see whether he could reasonably have been misled, or prevented from taking prompt and diligent measures for his own security. A printed notice was sufficient. (*Cuyler* v. *Stevens*, 4 Wend. 566.)

I think the judgment should be affirmed.

DENIO, Ch. J. The note on which this suit was brought matured, and was presented for payment, which was refused, on the 17th of August, 1857. The notice of protest sent to the indorser on the same day was in the same form as the one given in evidence in the case between the same parties on the note of $2000.(*a*) Offers to prove the existence of other notes corresponding in amount and in the names of the parties, maker and indorser, were made and rejected. It was not proposed to show that any note corresponding in amount with the one sued on had ever been held by the plaintiff; but that there were thirteen other notes so corresponding, outstanding in the hands of some parties when this note was protested, all of which were past due. This involves the point

(*a*) See the next case, post.

lastly discussed in the other case, and nothing is necessary to be added to what is there said.

One of the offers embraced the statement that there were twenty-seven other corresponding notes issued on different days in each month, from January to July, inclusive, in 1857; all of which matured in the same month, and in August. It was not offered to be shown that any of these last notes were outstanding when the note sued on was protested. The immateriality of such an offer was shown in the other case.

The note in question was dated on the 15th day of June, 1857; and it was proposed to show that two of the eleven notes first mentioned were dated on the same day. I do not perceive that this circumstance raises a distinction favorable to the defendants. Bearing in mind that the plaintiff had no knowledge of the existence of these two similarly dated notes, it was under no obligation to regulate or vary its notice by the circumstance that there were such notes. One objection to the notice is, that it did not state the date of the note to which it related. Suppose the date had been stated, it would not have enabled the defendants to distinguish it from the two others which bore the same date. If it had stated the time of payment, it might have been different, because it matured subsequently to the time embraced in the offer. But how was the plaintiff to know that the defendants were so situated, as the indorsers of North that such information would have been needed by, or would have been useful to them. It is not pretended that the bank knew that these defendants had ever indorsed another note for $1000 for any person, except the one which it held. The true principle, I think, is that if facts exist which render such a notice as was here given uncertain or equivocal, and the knowledge of these facts is confined to the indorser, or is not brought home to the holder of the paper, the notice is sufficient to charge the indorser.

I am for affirming the judgment.

All the Judges concurring,

                        Judgment affirmed.