Davies, Ch.
The defendant is sued as indoyser of a promissory note, made by one J. R. Gilmore, payable át plaintiff’s bank. The plaintiff had discounted a note for the same amount as the note in suit, made by the same parties, and which fell due November 7,1857, and was protested for nonpayment on that day. The president of the plaintiff applied to Gilmore, the maker, to take it up by a new note, and within six days thereafter, Gilmore went to the store of the defendant, and drew the note in suit, payable ninety days after date, to the order of the defendant, who then indorsed the same. When this note was produced in the trial, it appeared that originally it was dated “ November 8, 1857,” but that the figure “ 7 ” had been written over the figure “ 8,” which was erased, making the note to read as dated, “ November 7,1857.” The note was protested on the eighth day of February, 1858, and the notice of protest, to the defendant, described the note as dated November 7,1857, correctly stating the amount thereof, and the name of the maker. It was admitted that the 8th day of November, 1857, fell on Sunday.
Upon the trial, the defendant testified that after the note was filled up and signed by Gilmore, and indorsed by him, it came directly into his hands from those of Gilmore, and did not go out of his hands until it went to the Artisans’ Bank. That he took it to the bank and handed it to the president, Hr. Platt, and that he made no change in the note while it *275 was in Ms possession. That, on handing it to Mr. Platt, the defendant received from him the old note, which fell due November 7, and that this new note was made as a substitute for it. He also testified that at the time he indorsed this note, he did not at all notice the date of the note.
Gilmore testified that the original date of the note was November 8,1857; that he did not alter the figure 8 to 7, as it appears in the note, and did not know who made the alteration ; that he was present when the defendant indorsed the note, and that defendant took it from him to take to the bank. Gilmore was asked why the note was antedated, and he answered, the object was to date it the same date as of the maturity of the previous note; that he told defendant at the time he indorsed the note that it was in place of the other note, and that it was made at that time, and with that understanding; and that the only object he had, and the main point was, to get this note dated at the time the other fell due.
Tanner, a clerk in the bank, testified that this note came to the bank to replace another piece of paper, six days overdue; that he received it the same day it came .into the bank, and then surrendered another security in place of it; and that he was entirely certain that the note bore date on the 7th, at the time he received it.
In this connection it is to be remembered that the defendant had testified that he took this note to the bank, and delivered it to Platt, the president, and at the same time received from Mm the old note. It conclusively appeared by the testimony of witnesses, that the substitution of the figure 7 for that of 8 was not in Mr. Platt’s handwriting, and two witnesses acquainted with Gilmore’s handwriting, testified unequivocally that the figure 7 was Gilmore’s writing. It was not alleged, or pretended, that Gilmore had ever seen the note, or had it in Ms possession, except at the time it was indorsed by the defendant, and before it was taken to the bank by the defendant; and if, therefore, the testimony of these two witnesses is to be credited, that the figure 7 was in Gilmore’s handwriting, it follows conclusively that such alteration was made either before or at the time the defendant indorsed the note, and it was certainly made before it was delivered by the defendant to the *276 bank. The jury were therefore warranted in finding November 7 was the true date of the note before it was delivered by the defendant to the bank. Whether they were or were not, such is the verdict, and it is not the province of this court to examine the testimony to see if it is sustained by it. Then we ■ assume that fact as established, and it follows that the note was protested on the day it fell due.
The next question is, whether the defendant was duly charged as indorsee upon the dishonor of the note. Assuming, as we must, that the true date of the note was November 7, 1857, it fell due on the 8th of February, 1858, and on that day it was duly protested. The notary certified, and his certificate under the circumstances was prima facie evidence of the facts therein stated, that, on the 8th day of February, 1858, he duly served upon the defendant notice of the presentment for payment, and non-payment, and protest of the said promissory note. The defendant then proved that the following is the notice of protest which he received :
“ Neto Yorh, 18—.
Please to take notice that a promissory note, made by J. B. . Gilmore, for $5,125 70, dated November 7, 1857, payable at the Artizans’ Bank -in ninety days, indorsed 'by you, is protested for non-payment, and that the holders look to you for the payment thereof,” signed by the same notary who had protested the note and given the certificate already adverted to.
It is to be observed, that- the defendant does not contradict the statement of the notary that the notice was served upon him on the 8th day of February, 1858; but it is now contended, on the part of the defendant, that the notice of protest was not sufficient to charge the defendant as indorser; that the notice must show that the presentment was made at the proper time; and that this notice is defective in that it has no date, and does not state the day of protest.
Bearing in mind that the main object of the notice is “ to enable the indorser to take measures for his own security” (Edw. on Bills, 289), can it be doubted that this notice informed this defendant with reasonable certainty that this particular note had been dishonored ? The note was accurately and cor *277 rectly described in the notice as a note made by J. R. Gilmore, for the correct amount, with the correct date thereof, and payable at the Artisans’ Bank in ninety days, and indorsed by defendant, and declares that the same “ is protested.” There is no pretence that there was any other note of this description in existence at the time of the protest, and the proof is undeniable that it was protested on the day it fell due. If it was important for the defendant to know Rom- the notice the day of protest, he had all the elements in the notice to ascertain that fact. The correct date of the note was given, and the time it had to run, namely, ninety days. He therefore saw at a glance that it fell due on the 8th of February, 1858, and on that day this notice was served upon him, correctly describing the note, stating that the same “ is protested,” and that the holders looked to him for the payment thereof. The notice speaks in the present tense, of the protest as having been made on the ' day the notice was given, and not as of a past transaction, as that the note was or had been protested. If the notary had verbally, on the 8th of February, stated personally all that is contained in this notice to the defendant, can any serious question be raised that the defendant would not have been duly notified of the dishonor of this particular note? He was bound to assume that the notary would not—as he did not, in fact—protest the note before it arrived at maturity, and the notice served on him shewed that the note matured the very day of the service of notice of protest. There is no pretence that there was any other note of Gilmore’s in existence, indorsed by this defendant, than the one in suit,- and the date of the service of the notice of dishonor informed the defendant that it was not protested on any day after its maturity. As a matter of fact, it was protested on the day it matured, and there was nothing in the notice at all calculated to mislead the defendant. The essential facts needful to be communicated to the indorser, to bind him, were: 1. That the note had not been paid at maturity. 2. That it had been protested for non-payment. 3. An identification of the note thus unpaid and protested. All that information was conveyed to this defendant, with reasonable certainty, by the notice which was served upon him on the 8th of February, 1858.
*278 A brief reference to a few authorities will show that all has been done to charge this defendant which the law requires. Cook v. Litchfield (5 Seld., 279), is relied upon as showing the insufficiency of the notice in this case. An examination of the facts there-presented will show that it is an authority for the contrary doctrine. Four notes were issued by one J. L. Carew, payable to the order of the defendant, and indorsed by him. They all bore the same date, for equal amounts, and only differed in being payable at nine, ten, eleven, and twelve months from date. When the first note became due, it was protested, and notice given to the indorser in these words : “ Please to take notice that a promissory note made by J. L. Carew for $740, with interest, dated April 2,1849, indorsed by you, was, on the day the same became due, duly protested for non-payment, and that the holders look to you for the payment thereof.” It is to be observed that the important fact as to the time the note had to run—essential in that case to its identification—was omitted in that notice, but accurately stated in the notice in this instance. The plaintiff was the owner and holder of the four notes. Buggles, Ch. J., in the opinion of the court, says : “ In determining whether the description of the note or bill is sufficient, the circumstances of the case, and the defendant’s knowledge of those circumstances, be taken into consideration; and, therefore, where the notice to the drawer of a bill of exchange was, that his draft on A. B. was dishonored, the notice was adjudged to be sufficient, until it was shown that there was another bill drawn by the defendant on A. B., for which the one in question might be mistaken” (citing 7 Mees & W., 473). But the notices for the three notes last falling due were adjudged insufficient, as they contained no specification of the note referred to in the notice of the, protest. In reference to these cases Judge Buggles said : “ Nor does the notice in either case state when the protest mentioned in it was made, except by reference to the time when the note became due, and that time is not specified.” The notice was held sufficient to charge the indorser on the note first falling due.
In the case at bar, there was only one note in existence made by Gilmore, and indorsed by the defendant. The amount *279 of that note is accurately stated in the notice, by whom made, and by whom indorsed, its date, when payable, the time it had to run, which showed the time it became due, and declaring that the same “is protested,” thus refering to an act done simultaneously with the giving the notice. Cayuga Bank v. Warden 1 (Coms., 413), is an authority to sustain the sufficiency of the notice. It was there held, that whether the demand of payment was duly and regularly made, was matter of evidence to be given at the trial, citing Stochen v. Collins (19 Carr & P., 653); Young v. Lee (2 Kern., 551), is a case in point. There the notice was in these words : “ Sir, please to take notice that a promissory note, drawn by Bell and Goodman, for $1,000, indorsed by you, is protested for nonpayment, and that the holders look to you for payment thereof.” The notice was dated on the day the note fell due, but there is no indication in the notice of that fact, or when the demand was made; neither was the date of the note given in the notice, with the time it had to run, thus showing the date of its maturity, or the place where payable, as in the notice now under consideration. Yet this court held the notice sufficient to charge the indorser. Judge Johnson, in the opinion of the court, says, that the statement in the notice in that case, dated on the day wh en the note was payable, must be intended to mean that it had been demanded, and payment .'refused, upon the day when it became due. A statement that a note bad been protested on the day it became due, though the day w°s not stated, nor couhl be collected from the terms of the notice, was held to be sufficient in Litchfield v. Cook (MS., Dec., 1853), in this court.
In Home Ins. Co. v. Green (19 N. Y., 518), Denio, J., correctly observed, that it was true that no precise form is necessary for these notices ; but they must reasonably apprise the party of the particular paper upon which he is sought to be charged. In that case, the name of the maker of the note was left blank, and it was held that the notice did not satisfy that requirement. The facts in Hodge v. Shuler (22 N. Y., 114) were these: The defendants were sought to be charged as indorsers of a promissory note issued by a railroad company, signed by Sam. Hensliaw, treasurer, and F. FolleLt, *280 president, for the sum of $1,000, payable to the order of the defendants. The note bore date April 1, 1850. It appeared that the defendants were contractors in building the road for said company; and that, on or about the date of. said note, they received from said company, in satisfaction of their contract and work, the note in suit, and four other notes of ■ the same date, and amounts in every respect corresponding with the note in suit, except that the numbers of all the said notes marked thereon were different each from the other. The notice of protest served on the defendants, omitting the date thereof, was in these words : “ Please take notice that a promissory note made by S. Henshaw, treasurer, for $1,000, dated April 1st, 1850, payable in four years, in favor of yourselves, and indorsed by you, has been presented by me to the office of the treasurer; and payment being duly demanded was refused, whereupon, by direction of the holder, the same has been protested, and payment thereof is requested of you.” The law applicable to notices of this character is thus cleaPv stated by Judge Weight : “A notice that, in terms, or by necessary implication, or reasonable intendment, informs the indorser that the note has become due, and has been presented to the maker and payment refused, is sufficient. The party to whom the notice is addressed should not be misled by an indefinite or uncertain description of the note, and, from the imperfection of the notice itself, be unable to determine to what particular note it refers. A notice which omits an essential feature of the note, or misdescribes it, is an imperfect one, but not necessarily invalid. It is invalid only when it fails to give that particular information which it would have given but for its particular imperfection; and even in case the notice in itself be defective, if, from evidence aliunde of the attendant circumstances, it is apparent that the indorser was not deceived or misled as to the identity of the dishonored note, he will be charged. A note is well described when its-maker, payee* date, amount, and time and place of payment are stated.” As already observed, all these essential particulars are contained in the notice given in the present instance.
The same doctrine is enunciated by the Supreme Court *281 of the United States, in Mills v. Bank of the United States (11 Wheat., 431), and re-affirmed in this court in the two cases of the Bank of Cooperstown v. Woods (28 N. Y., 545-561). Upon principle and authority, therefore, we are bound to hold the notice sufficient in this case to charge the indorser; and the omission to date it was an immaterial circumstance. - That omission, in this instance, could not, and did not mislead the defendant in the identification of the note protested.
There remains to be considered one other question, viz.: Whether the plaintiff gave time to the maker of the note, whereby the indorser was discharged. Upon this point, the judge charged the jury as follows: “ If you come to the conclusion that there ever was a valid and subsisting agreement between Gilmore and the bank, or Platt, to extend the time of payment, and to give these securities, and that the bank accepted them, then you will have to find for the defendant, because the result of it is, that it would extend the time of payment to Gilmore upon the promissory note upon which this action is brought for a year, or for whatever time was agreed upon. Such extension, if made, was without the consent of Backus, the indorser, and it will render his engagement, which is that of a surety, invalid. But, on the other hand, if you come to the conclusion that Gilmore’s testimony is not reliable, and that there never was a valid and subsisting agreement, and no agreement was made, and these mortgages were not valid securities in the hands of the bank, then the defence founded on the extension of time to Gilmore fails.”
The defendant, in his answer, alleged that the plaintiff, for a valuable consideration, after the maturity of said note, and without the knowledge or assent of the defendant, made an agreement with Gilmore, the maker of the note, whereby plaintiff agreed to extend the time for the payment of said note for the period of one year, from the date of said agreement. He also set up, that, after the maturity of the note, the plaintiff took from Gilmore a certain mortgage on lands in New Jersey, “ as collateral security for his entire indebtedness to the plaintiff,” but upon the understanding and agreement *282 that the same should be applied, first, to the satisfaction of .so much of said indebtedness as was secured by the said promissory note. “ That said mortgage was a lien upon property of great value, and that subsequently the plaintiff discharged the same of record, and the same was surrendered and delivered ' up to Gilmore. The substance of this allegation is, that the plaintiff took the mortgage as collateral security, and subsequently canceled it. There is no claim that the plaintiff ever collected or received any thing on Account thereof, or that, by the exercise of true diligence, he might have obtained any thing thereon. There is no averment that the mortgage was of any value. It might well be a lien on property of great value. Tet, if it was not a primary lien, or if it did not appear that the prior liens were less than the value of the property covered by them, it would not follow that the plaintiff surrendered security of any value by the discharge of this mortgage.
From the facts set up in the answer, it did not appear that the defendant had been in any way damnified by the dealings of the plaintiff with Gilmore in respect to this mortgage.
As to the extension of time, Gilmore, upon the trial, testified that after the note became due there was an agreement between himself and plaintiff’s president. He says it was an extension of the whole indebtedness for one year, with the privilege of two, if it was required, to carry out certain operations he (Gilmore) had projected. He was to give the bank security on a considerable amount of property in Hew Jersey, and the bank was to loan him $10,000 on the property, he applying this $10,000 to the improvement of ■ the property. To carry out this arrangement, Gilmore, with his wife, executed to the bank two mortgages, which he placed in the hands of the attorney of the bank. He further testified, that he never received the $10,000, or any part of it, and that the plaintiff failed to carry out his part of the arrangement.
It appeared, on the part of the plaintiff, that an agreement was drawn up to be executed between the plaintiff and Gilmore, but that it never was signed. The agreement for *283 the extension o/ time to Gilmore, for the payment of the note, depended wholly upon Gilmore’s testimony; and the judge at the circuit very properly told the jury, that if Gilmore’s testimony was to be believed, and they found that a valid and subsisting agreement had been made between the plaintiff and Gilmore, extending the time of payment of the note, without the consent of Backus, then Backus, standing as surety for the payment of this note, was discharged. But, on the other hand, if the jury came to the conclusion that Gilmore’s testimony was not reliable, and that no valid subsisting agreement was ever made, then the defence, founded on the extension of time to Gilmore, failed. The charge of the judge to the jury is in harmony with the doctrine laid down by this court in Halliday v. Hart (30 N. Y. R., 474) and upon the facts as found by the jury in the present case, that authority is decisive of this case.
It was vital, to the establishment of the agreement to give time, that Gilmore’s statement to that effect should be believed. There was no foundation for the existence of .this agreement, but his testimony. Martin, a witness for the defendant, expressly negatives the idea that any agreement for extension of the time for the payment of this note was ever made with Gilmore. He states, that Gilmore proposed an extension of his indebtedness for twelve months, and that he would give security; and there were other terms, among which was one that the bank should advance to Gilmore $10,000 or $20,000. It is apparent, from the testimony of both witnesses, that this negotiation fell through. By the terms of the mortgage, no extension of time for the payment of Gilmore’s indebtedness, which was secured by it (and it professed to secure the whole), was given, or provided for, or mentioned. It contemplated and declared that the whole amount, thus seemed, was due presently and immediately demandable, and negatives the idea or statement of Gilmore that twelve months was given to him for the payment of his indebtedness to the bank.
It is difficult to believe, that if the bank had agreed to give Gilmore one or two years for the payment of his indebtedness to it, and such time was given in consideration of his securing the same by a mortgage, such mortgage should not only have *284 been silent as to such time, but, in express terms, should have made the amount secured thereby immediately payable.
To establish this defence, as set up and claimed by the answer, it was essential to make out the existence of the agreement relied on. That was a question of fact, which was properly left to the jury. They have found it adverse to the claim of the defendant’s answer, and this court is to assume that no such agreement was ever made as therein set forth.
This disposes of this ground of defence, and the judgment appealed from must, therefore, be affirmed, with costs.
Grover, J.
It is well settled, that an error in denying a non-suit, at the close of the plaintiff’s case, for a defect of proof, cured, if such proof is supplied at a subsequent stage of thé trial. This renders it unnecessary to determine whether the plaintiff was bound, in the first instance, to give any evidence as to the alteration of the date of the note apparent on its face. Evidence upon this point was subsequently given by both parties, and the question properly submitted to the jury. The only legal question arising upon the extension given by the plaintiff to Gilmore, the maker of the note, for payment, was whether the judge should have directed a verdict for the defendant, or submit the question of Gilmore’s credibility to the jury. I think the submission of the latter question to the jury not error. It is the duty of the court to direct a verdict in accordance with the evidence, in cases where there is no reasonable doubt about the facts, and to assume that the testimony of a witness is correct, where there is no apparent reason to doubt its truth. But when such doubt exists, founded either upon the improbability of the testimony, the manner of the witness, or the inconsistency of the testimony with other facts appearing in the case, the question should be submitted to the jury. In the present case, Gilmore testified that one of the provisions of the agreement, by which it was claimed the time was extended, was, that the bank should loan him the further sum of $10,000. This had never been done; and, although years had elapsed, it did not appear that any portion of the money *285 had been called for, nor was any explanation why it had not been attempted. It also appeared that the bank had canceled of record one of the mortgages given, as was claimed, pursuant to the agreement, without receiving any pay or further security upon the large debt owing it by Gilmore. The president of the bank, with whom it was claimed the agreement was made, was dead. This, I think, together, presented a proper case to submit the credibility of Gilmore’s testimony to the jury.
Whether the jury came to the proper conclusion thereon, is a question for the consideration of the Supreme Court, but not for this court. Indeed, the Supreme Court, at general term, upon appeal from the judgment, has no power to set aside a verdict on the ground that it is against the weight of evidence. That can only be done upon an appeal from an order of special term granting or denying a new trial.
The only remaining question is whether the notice of dishonor of the note served upon the defendant was sufficient. The defect claimed is that it did not inform the defendant that the note was presented at maturity, or when it was presented for payment, and dishonored. The notice is without date, properly describes the note and says it is protested. The certificate of the notary shows presentment and dishonor on the day the note matured, and that this notice was on the same day mailed, post-paid at the proper place, addressed to the defendant.
As an original question I should hold this notice insufficient. ■ From it the defendant could not tell whether the note was pre- - sented at the proper time or not. Wynn v. Alden (4 Denio, 163), holds such a notice insufficient for the reason above assigned.
But I am unable to distinguish this case from Young v. Lee (2 Kern., 552), determined by this court. The notice in that case in respect to the point under consideration was precisely like the one in the present case, except that it was dated upon the day of the maturity of the note. It is a settled rule that in considering the sufficiency of a notice, any extrinsic fact known to the defendant which would inform him fully in respect of any fact in which the notice was defective must be taken into account, and the point determined whether the notice, aided by such fact, gave the necessary information. (See *286 case last cited.) The court may, I think, take judicial notice of the manner of mailing letters; that is, that the date of mailing is uniformly stamped thereon. Then all the defendant had to do was to look at the time of mailing the notice, and he would see that it was upon the day the note matured. This proved that the note was protested that day, as clearly as though the notice bore date upon that day. If, therefore, the date of the notice in Young v. Lee informed the defendant that the note was protested on that day, and not before, it would follow that the date of the mailing the letter conveyed the same information.
It is important that a rule established by this court should be adhered to in all cases coming within the same principle. My conclusion is that upon this authority the judgment should be affirmed.
All the judges concurred.
Judgment affirmed.