Arnold *v.* Kinloch.

---

## ARNOLD *vs.* KINLOCH.

A notice, given tne day after the maturing of a promissory note, describing the paper, and merely stating that *it has not been paid*, and requesting payment, is not sufficient to charge the indorser.

An indorser is entitled to notice that the note he has indorsed has been duly presented to the maker, at maturity, and *dishonored*.

The mere assertion of non-payment of commercial paper does not, expressly or by implication, show any *dishonor*, or that payment, on due presentment, has been refused.

APPEAL by the defendant from a judgment entered upon the report of a referee in favor of the plaintiff.

The action was brought against Charles Kinloch, as indorser, and against another defendant as maker, of a

Arnold *v.* Kinloch.

promissory note for the sum of $657, dated at Troy, July 13, 1865, made by Alexander G. Kinloch, and payable to the order of the defendant Charles Kinloch, six months after date, at the Mutual National Bank, and indorsed by the defendant. The only question litigated on the trial between the parties to this appeal was, whether sufficient notice of dishonor of the note had been given to the appellant to charge him as indorser. There was no conflict in the evidence. It appears that the next day after the maturity of the note a son of the plaintiff, duly authorized, presented it to the indorser and orally stated to him that it had not been paid, and requested him to pay the same ; and the defendant replied that he had not then the money, and could not pay the same before the following Saturday. The note having been in fact duly presented for payment and the payment thereof refused, the referee held the foregoing notice sufficient to fix the appellant's liability as indorser, and rendered judgment for the plaintiff. The defendant having duly excepted, appealed from the judgment to the general term.

*R. A. Parmenter,* for the appellant.

*J. A. Millard,* for the respondent.

HOGEBOOM, J. The single question here is, whether notice, given the day after the maturity of a promissory note, properly describing the paper, and merely stating that *it had not been paid,* and requesting payment, is sufficient to charge the indorser. For as the indorser in this case made no promise to pay which would justify the inference of an intention to dispense with the observance of any of the formalities essential to charge him as such, we cannot properly say there was any waiver of due notice of the dishonor of the note, which can only be effectual when made with a knowledge of the facts. (*Story on Prom. Notes,* §§ 274–280. *Trimble* v. *Thorne,* 16 *John.* 154. *Jones* v. *Savage,* 6 *Wend.* 660.

*Cayuga Co. Bank* v. *Dill, 5 Hill,* 403.   3 *Kent's Com.* 5th *ed.* 113.)

It is believed that in principle and upon authority such notice is insufficient. The mere assertion of non-payment of commercial paper does not expressly, or by implication, show any *dishonor,* or that payment, on due presentment, had been refused. The drawer of a bill of exchange has the right to expect that his promise will be performed by the drawee. "He has also," said Chief Justice Marshall, in his opinion in the case of *Ogden* v. *Saunders,* (12 *Wheat.* 341,) "a right to expect notice of its non-performance, because his conduct may be materially influenced by this failure of the drawee. He ought to have notice that his bill is *disgraced,* because this notice enables him to take measures for his own security. It is reasonable that he should stipulate for this notice, and the law presumes that he did stipulate for it." And the same reason and presumption are applicable to an indorser. He, too, is entitled to notice of dishonor. *Story* declares that the notice must contain "an assertion that it (the note) has been duly presented to the maker at its maturity, and *dishonored.*" \* \* \* "But a mere notice of the fact that the note has not been paid, affords no proof whatsoever that it has been presented in due season, or even that it has been presented at all ; for it may be that the holder means to rely upon some legal excuse for non-presentment." \* \* \* "If, however, there be no statement of the *dishonor* of the note, nor any thing from which it can fairly be implied that a due presentment has been made, the notice would seem to be *fatally* defective." (*Story on Prom. Notes,* 5th ed. §§ 848, 850, 351, 354.)

*Kent* says, "the notice must specify that the bill is *dishonored.* \* \* \* There is no precise form of the notice. It is sufficient that it state the fact of non-payment *and* dishonor of the bill." ( 3 *Kent,* 150, 151.)

*Parsons* says, "the purpose of notice is, that the party receiving it may obtain security from the party liable to him

for the sum for which he is liable to other parties. No precise form is necessary ; but it must be consonant with the facts, and state *distinctly* the. *dishonor* of the bill, and either expressly or by an equivalent implication, that the party to whom the notice is sent is looked to for the payment. And it is held by the best authority, that this implication arises from the actual notice of dishonor." (1 *Parsons on Cont.* 283.) *Chitty* says, " The notice, however, must explicitly state what the bill or note is, and that payment has been refused by the drawee or maker.   *   *   *   A letter from an indorsee to a drawer, merely containing a demand of payment, without stating that the bill had been presented and refused payment, is not sufficient." (*Chitty on Bills,* 8th ed. 501.) .

*Edwards* says : " The fact to be communicated in some form is, that the note or bill has been dishonored by the default of the acceptor or promissor." (*Edw. on Bills and Notes,* 593. *See also* p. 595.)

And the same rule appears to be established by the English courts and those of our own. state. In *Wynn* v. *Alden,* (4 *Denio,* 163,) the note was duly presented to the maker for payment, which was refused, and on the same day notice in writing, *but without date,* was mailed to the indorser, stating that the note, which was properly described, had "*this day* been presented to the maker for payment, and payment refused," and adding that the holder would look to the indorser for the payment of the same. The question was whether the notice showed that the presentment and demand were made at the proper time. The notice was held sufficient, in the common pleas, but the Supreme Court reversed the judgment, and Justice Beardsley, in delivering the opinion of the court, said : " Payment of a note should be demanded *at its maturity,* when it becomes due and is payable ; *and the notice should so state.* The contract of the indorser is conditional, and only binds him to pay the note when such demand has been made and payment refused, *and due notice*

*thereof given.* The fact of such presentment and dishonor of the note may appear in express terms or by necessary or reasonable implication *from what the notice contains.* And it *must appear* in one form or the other, or the *notice will be defective.*"

In *Dole* v. *Gold,* (5 *Barb.* 490,) the question now before us was distinctly decided. The notice described the note and stated that it was due that day and had not been paid ; that the plaintiff was the owner and holder of the note, and looked to' the defendant for payment. The court entered at large into an examination of the authorities, held the notice insufficient as not sufficiently indicating the dishonor of the note, and laid down this rule, as expressed in the head note of the case : " A notice to an indorser must in express terms, or by necessary implication, convey to him information of the fact that the note has been *dishonored* by the maker ; or such notice will be insufficient to charge him."

In *Cook* v. *Litchfield,* (5 *Selden,* 286,) Ch. Justice Ruggles said : " The object of the notice is to put the indorser in possession of the material facts on which his own liability is founded, so that he may be enabled to take the necessary measures for his own security or indemnity against those who are liable over to him. A notice which is barely enough to put the indorser on inquiry is not sufficient." " It is well settled that there is no precise form of words to be used in giving notice ; it is sufficient if the language used is such as in express terms or by necessary implication to convey notice to the indorsers of the identity of the note and that payment of it on due presentment has been neglected or refused by the maker." (*Cayuga County Bank* v. *Warden,* 1 *Comst.* 417.)

The following are some of the English authorities bearing against the sufficiency of the present notice : *Hartley* v. *Case,* (4 *Barn. & Cress.* 339 ;) 10 *Com. Law Rep.* 606 ; *Solarte* v. *Palmer,* (7 *Bing.* 530 ;) 20 *Com. Law Rep.* 238 ; 27 *id.* 602 ; *Boulton* v. *Welsh,* (3 *Bing. N. C.* 688 ;) 32 *Com. Law Rep.* 283 ; *Strange* v. *Price,* (10 *Ad. & El.* 125 ;)

Arnold *v.* Kinloch.

37 *Com. Law Rep.* 88 ; *Furze* v. *Sharwood*, (2 *Ad. & El. N. S.* 338 ;) 42 *Com. Law Rep.* 726.

" A notice given to the indorser of a note in the forenoon of the day on which it becomes due, merely stating that the person giving notice holds the note, and that is due and unpaid, and demanding payment, is not sufficient to charge the indorser," the note having been duly presented and dishonored.. (*Gilbert* v. *Dennis*, 3 *Metc.* 498.)

" A notice to the indorser of a note, which merely states (after describing it) that the note remains upaid, and that the holders look to him for payment, is not sufficient to charge the indorser, although such notice is given by a notary public." (*Pinckham* v. *Macy*, 9 *Metc.* 174.)

In *Townsend* v. *Lorain Bank*, (2 *Ohio R.* 355,) Ranny, J. after reviewing the English and American authorities on this question, said : " It thus appears that in England and the great commercial states of Massachusetts, New York and Pennsylvania, the rule is firmly established that the holder, in order to charge the indorser, must inform him, in the notice he gives, that the note or bill has been dishonored ; *that it will not be inferred from mere notice of non-payment.* \* \* \* And we apprehend the rule has its foundation in the very elements of the contract into which the indorser enters, and is indispensable to the protection of his rights. \* \* \* He promises to pay it provided the holder, if payable at large, at the maturity of the instrument, presents it to the maker or acceptor for payment and it is refused ; or, if payable at a specified place, if the latter neglects to have funds there to take it up, and in either case he is immediately notified of the fact that it is thus dishonored."

The following are instances in which the terms employed in the notice have been held reasonably to imply a due presentment and refusal to pay : " Has been *protested* for nonpayment, and the holders thereof look to you." (*Mills* v. *Bank of the United States*, 11 *Wheat.* 431.) " Was this

evening *protested* for non-payment, and the holders look to you for the payment thereof." (*Cayuga County Bank* v. *Warden,* 1 *N. Y. Rep.* 413.) "Was, on the day the same became due *duly protested* for non-payment, and the holders look to you for the payment thereof." (*Cook* v. *Litchfield,* 5 *Seld.* 291.) "Is *protested* for non-payment, and that the holders look to you for payment thereof." (*Bank of Cooperstown* v. *Woods,* 28 *N. Y. Rep.* 545. *Youngs* v. *Lee,* 12 *id.* 551.) In the last case (*Youngs* v. *Lee*) the court say, at page 554, a waiver of *protest* was held, in *Coddington* v. *Davis,* (1 *N. Y. Rep.* 186,) to include demand and all other acts in law necessary to charge an indorser. Upon the same principle the statement in this notice, dated on the day when the note was payable, that it had been *protested* for non-payment must be intended to mean that it had been demanded and payment refused on the day when it became due.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

PECKHAM, J. concurred.

MILLER, J. dissented.

Judgment reversed.

[ALBANY GENERAL TERM, March 4, 1867, *Peckham, Miller* and *Hogeboom,* Justices.]